# THE STATE v. WILLIAM H. BELL, Appellant.

## (No. 1.)

### Division Two, May 19, 1908.

1. **FORCED TO TRIAL.** Where defendant made no application for a continuance, although given the opportunity to do so, there is no merit in his claim that he was forced to go to trial without his witnesses.

2. **WIFE AS WITNESS:** Cross-Examination: No Objection. Where no objection was made to questions propounded to defendant's wife on cross-examination, it will be too late to object on appeal that inquiries were made of her about hurtful matters concerning which she was not examined in chief.

3. ———: ———: **Letters.** Interrogatories on cross-examination of a wife, placed upon the stand as a witness for her husband, the defendant, concerning letters which passed between them, are prohibited by the statute which forbids either husband or wife to disclose confidential communications; and if permitted, over defendant's exceptions, are error.

4. ———: ———: **Forgery: Express Money Order.** Where defendant was indicted for forging and uttering a forged express money order, and there was evidence that nine other blank express money orders had been purloined from the office at about the same time and that defendant had uttered three of them, inquiries of his wife if she had seen any express money orders in his possession, and her answers over objections that she had, were very material evidence, and error.

5. ———: ———: **Conference With Counsel.** It is error to permit the State to require defendant's wife to detail conferences and conversations she had had with defendant's counsel prior to the trial.

6. **FORGERY:** Evidence: Other Crimes. Testimony that a day or two before defendant uttered the express money order charged to be forged, the express office by which the order purports to have been issued was burglarized and ten express money orders, one of which bore the same number as the forged one, were stolen therefrom, is competent. If the commission or attempt to commit another crime tends to establish the commission of the crime in question, or is in fact one of its constituent elements, testimony concerning it is competent.

7. ———: ———: **Express Order: Authorized to Do Business.** Where defendant is charged with having forged an express money order, the order is not inadmissible as evidence because

State v. Bell.

it has not been shown that the company was authorized to do business in this State.

8. **HYPOTHETICAL QUESTION: Covering All Testimony.** It is error to refuse to permit an expert to answer a hypothetical question on the ground that it does not cover all the testimony in the case.

9. ———: **Expert: Qualification.** Where a physician expressly declines to testify as an expert on insanity, and the only evidence tending to show that he is an expert on the subject is that he has had twenty-five years' practice, without any showing that he ever had any occasion to treat patients for insanity or any experience in that particular branch of his profession, he is not an expert, and the court should exclude his answers referring to defendant's insanity.

10. **EXPERT: Compelled to Testify Without Extra Fee.** It is error for the trial court to sustain an expert in his refusal to answer a question on behalf of defendant concerning matters specially within his knowledge until he has first been compensated for his opinion. A witness called to testify as an expert, whether a physician or an expert in any other branch of knowledge, can be compelled to state his opinion in answer to a hypothetical or other question involving his professional knowledge, without further compensation than that allowed by law to other witnesses.

11. **FORGERY: Sufficiency of Evidence: Possession of Forged Instruments.** Possession of the forged instruments and the utterance of them soon after they were forged are cognate evidence that the defendant was the forger. So that where the evidence tends to show that a day or two prior to the uttering in Kansas City by defendant of three forged express money orders for fifty dollars each, to which a fictitious agent's name had been signed, the express office at Warsaw, by which they purported to have been issued, was burglarized, and ten blank money orders, three of them bearing the same numbers as those uttered by defendant, were stolen therefrom; that the office was burglarized on the night after defendant had purchased another order from the real agent for five dollars; and that when arrested defendant stated to the officer that he purchased these orders from an unknown man for $100, the court did not err in refusing to instruct the jury to acquit defendant on the ground that there was no evidence to prove that defendant wrote or caused to be written the express money order described in the information.

12. ———: **Information.** The information set out in the statement charging defendant in the first count with having forged an express money order and in the second count with having

uttered said order, which is set forth in full in both counts, is held to follow the statute, to specifically allege the time and place where the offense was committed, and to be sufficient.

Appeal from Jackson Criminal Court.—*Hon. J. H. Slover*, Special Judge.

REVERSED AND REMANDED.

*A. E. Martin* and *L. N. Dempsey* for appellant.

(1) The court, in compelling defendant to go to trial without his witnesses, committed error. Defendant had taken all legal steps to get his witnesses, even to an attachment, and all of said witnesses not appearing were important and necessary by which defendant could have proven facts that he could not prove by any other witnesses. (2) (a) The court erred in permitting the State, over the objection of defendant's counsel and against their exception, to cross-examine Della Bell, wife of defendant, about matters and subjects not examined about in chief, and about correspondence and communication made between her and her husband, in violation of section 2637, Revised Statutes 1899, that the testimony of Mrs. Bell as to going with Mr. Bell from Kansas City to St. Louis and as to Bell showing her the package of money orders, shown her by the prosecuting attorney, and whether Bell concealed them from her, and whether he told her about being at Warsaw and buying a farm, and whether he wrote to her and where from and what she did with his letters, and that she burned them, and that she saw some of the letters in St. Louis, and that she went to Mr. Martin's residence to consult him about her husband's case, and whether she and all the witnesses who testified on insanity had not learned their story together, etc., and the defendant did not tell her that he had stolen the various orders, and that he had given an order for

State v. Bell.

some silk and change, and that he had given an order for a pair of shoes and change, which was all incompetent, illegal and highly prejudicial to the defendant. Kelley, Cr. L., sec. 271; 166 Mo. 239; 89 Mo. 133; 95 Mo. 510; Underhill, Cr. L., sec. 187; Wharton, Cr. Ev., sec. 398; 146 Mo. 225; 55 Mo. 91; 119 Mo. 474. (b) The court erred in permitting the State to prove by the witness, Detective Ghent, statements made by defendant to Ghent with reference to other Pacific Express money orders than the one for which defendant was on trial, and statements in reference to the purchase of a farm by defendant Bell. 82 Mo. 558; 104 N. Y. 591; 7 Texas App. 501. (c) The court erred in permitting Hodgson to testify that the depot at Warsaw was burglarized and Pacific Express money orders stolen, for the reason that defendant had not been connected with the crime with which he was charged. Wharton, Cr. Ev. (9 Ed.), sec. 47, p. 49; 82 Mo. 558; 144 Mo. 54; 88 Mo. 604. (d) The court erred in refusing to let Dr. W. D. Field and other physicians answer the hypothetical question based on the evidence of insanity in the case, propounded to them by defendant's counsel, for said question covered the evidence of insanity in the case. Lawson, Ex. Test., p. 167; Jones, Ex. Test., sec. 337; Rogers, Ex. Test., sec. 27; 99 Mo. 121; 108 Mo. 150; 137 Mo. 64; 175 Mo. 207. (e) The court erred in ruling that Dr. Theodore Schaffer could not be compelled to answer the questions asked by defendant's counsel as to his opinion of the mental condition of defendant from the examination Dr. Schaffer had made of defendant at that time and at the time of the trial, unless the doctor was paid in advance for his opinion. (3) The State wholly failed to prove the defendant's connection with the crime alleged, in that there was no testimony to prove that defendant wrote or caused to be written Pacific Express money order, No. 207369. Hughes' Cr. L., sec. 927; Wharton, Cr.

L., sec. 1465a; 166 Mo. 241; 152 Mo. 123. (4) The court erred in ruling that Dr. Theodore Schaffer could not be compelled to answer the questions asked by defendant's counsel as to his opinion of the mental condition of defendant from the examination Dr. Schaffer had made of defendant several months before, and the doctor's observations of defendant at that time, and at the time of the trial, unless the doctor was paid in advance for his opinion. Rogers, Ex. Test., p. 311, sec. 310; Ewell's Med. Jur., p. 15.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1) The information, which was accompanied by the affidavit of the prosecuting attorney, is sufficient in form and substance. Kelley's Criminal Law, sec. 780; State v. Gullette, 121 Mo. 448; R. S. 1899, secs. 2009 and 2014. (2) (a) Defendant's counsel objected to the State's evidence tending to show that defendant committed other forgeries than the one here charged. But the rule of law has long been established, especially in Missouri, that, upon an indictment for forgery, evidence is admissible tending to show that the defendant has been guilty of other forgeries, committed about the same time. State v. Hodges, 144 Mo. 50; State v. Minton, 116 Mo. 613; State v. Myers, 82 Mo. 558; State v. Prins, 117 Iowa 505; Com. v. White, 145 Mass. 392; Davis v. State, 58 Neb. 465; Underhill on Crim. Evidence, sec. 423; 1 Wigmore on Evidence, sec. 312; 4 Elliott on Evidence, sec. 2990; 3 Greenl. on Evidence, sec. 111. (b) Defendant's counsel also objected to State's witnesses Hodgson and Scott testifying to the fact that a day or two before the money orders were passed, the defendant appeared at the office of the Pacific Express Company, in Warsaw, Missouri, bought a money order, saw where the blank money orders were kept, and to the further fact that that night some one broke into

the office and carried off a book containing a number of blank money orders, one of which was the money order in question.  This evidence was objected to on the ground that it tended to prove that the defendant was guilty of burglary and larceny, crimes other than the one for which he was then on trial.  While the general rule of evidence prohibits the introduction of evidence tending to prove that the defendant is guilty of the commission of other crimes, yet there is a well-recognized exception thereto.  4 Elliott on Ev., sec. 2720; Underhill on Crim. Ev., sec. 90; State v. Medigan, 57 Minn. 432; State v. Spaugh, 200 Mo. 595.  (c)  Defendant's objection to the introduction in evidence of the money order, because it was not shown that the Pacific Express Company was authorized to do business in Missouri, can hardly be considered seriously. It has often been held by this court that it is not necessary even to introduce the record, and prove that a corporation is duly incorporated; but that parol evidence of that fact is sufficient.   State v. Jackson, 90 Mo. 159; R. S. 1899, sec. 2634.   But whether said company was a corporation or not, and whether it was authorized to do business in Missouri or not, were immaterial questions in this case, especially after defendant interposed a plea of insanity.  By his plea of insanity, defendant admitted the commission of the criminal act, but interposed as a defense thereto that his mental condition was such that he could not distinguish between right and wrong.   Judge SHERWOOD, in State v. Pagels, 92 Mo. 309, said that such a defense was in the nature of a plea of confession and avoidance, and that it was wholly immaterial to discuss whether or not dying declarations (or, as in this case, the authority of the express company) were properly received in evidence. State v. Welsor, 117 Mo. 579; State v. Stubblefield, 157 Mo. 364.  (3)  There was sufficient evidence to justify the conviction of the defendant of the crime charged.

Indeed, his plea of insanity admitted his guilt, but asserted that he was not responsible for his conduct. State v. Welsor, supra; State v. Pagels, supra.

GANTT, J.—This is an appeal from a conviction in the criminal court of Jackson county of forgery in the third degree.

The prosecution was commenced on the 21st day of November, 1906, by information, duly verified, in which defendant was charged in the third degree with forging a Pacific Express money order for fifty dollars and in the second count with uttering the same money order to the Jones Dry Goods Company, a corporation, on October 9th, 1906. At the January term, 1907, the defendant was tried and convicted of forgery and his punishment assessed at two years in the penitentiary. After unsuccessful motions for a new trial and in arrest of judgment, the defendant appealed.

The evidence on behalf of the State tended to prove that the Jones Dry Goods Company was a corporation organized under the laws of Missouri, and conducting a dry goods store in Kansas City; that the defendant visited said store on the 9th of October, 1906, and purchased $9 worth of silk, for which he gave in payment a Pacific Express money order for fifty dollars. This money order was dated Warsaw, Missouri, October 9th, 1906, and was made payable to J. W. Clark or order. The defendant stated that his name was Clark, and he had purchased the money order just before going to Kansas City, as he did not wish to carry so much money with him. The cashier of Jones Dry Goods Company accepted his story and paid him the difference between the amount of the order and his purchase, which money defendant carried away with him with the silk. This money order proved to be a forgery. The agent of the express company at Warsaw testified that he did issue a money order to the defend-

ant under the name of W. H. Allen for five dollars, a day or two before the transaction in question, and that that night someone broke into his office and stole ten blank money orders of the Pacific Express Company; one of these orders was numbered the same as the one which the defendant passed at the Jones Dry Goods Company, and the agent testified that it was never signed or issued by him. The name of W. H. Bowman, agent, was signed to this money order, but that was not the name of the agent at Warsaw of the Pacific Express Company on that date, nor was it the name of any former agent of said company at said place. The evidence further tended to show that the defendant then went to the trunk store of W. F. George & Company, and purchased a trunk for $23, saying that it was for his wife, and he had a wire fixture placed in it for carrying a lady's bonnet. In payment for this trunk he gave another money order for fifty dollars, which he endorsed J. W. Clark and which Mr. George accepted, paying him the difference of $27 in money. On the same day he passed a similar money order on the Mitchell Dry Goods Company in Kansas City in payment for a pair of shoes. In the course of a few days, the defendant was arrested in St. Louis and had in his possession the pair of shoes last mentioned and the trunk. Officer Ghent went to St. Louis for the defendant and on the way back to Kansas City asked the defendant how he happened to have all these money orders in his possession. The defendant said: "You have treated me pretty nice, and I will tell you the whole facts about this. I bought these drafts from a man and gave him $100 for them at Warsaw." When the officer asked him who the man was, the defendant said he did not know. The officer said it was strange for him to buy such stuff as that from an unknown man and the defendant said he would tell who the man was later on. The defendant also said he was in the saloon

business on Main street in Kansas City. On behalf of the defendant there was evidence tending to show that he was insane from the time he was arrested and put in jail in Kansas City and at the time of the commission of the offense charged. In rebuttal the State offered evidence that the defendant was of sound mind at the time of the commission of the crime and at the time of his arrest.

As the information is assailed it is deemed necessary to insert it.

"State of Missouri, County of Jackson, ss.

"In the Criminal Court of Jackson County, Missouri, at Kansas City, Missouri, September Term, 1906.

"Now comes Isaac B. Kimbrell, prosecuting attorney for the State of Missouri, in and for the body of the county of Jackson, and upon his oath informs the court that W. H. Bell *alias* J. W. Clark, whose Christian name in full is unknown to said prosecuting attorney, on the 9th day of October, 1906, at the county of Jackson, State of Missouri, feloniously and wilfully did forge, counterfeit and falsely make a certain false, forged and counterfeited express money order which said express money order was then and there an instrument of writing purporting to be the act of another and which said instrument of writing purported to create a pecuniary demand and obligation, which said false, forged and counterfeited express money order and instrument of writing is of the purport and effect following, to-wit: 'Express Money Order N. 207,369. When countersigned by agent at point of issue the Pacific Express Company agrees to transmit and pay to the order of J. W. Clark $50 the sum of fifty No. 100 Dollars. Not good for more than highest printed marginal amount. In no case to exceed fifty dollars. W. R. Carter, Treasurer. Countersigned W. H. Bowman, agent. Issued at Warsaw, Mo. State of ————. Name of remitter J. W. Clark. Date October 9, 1906. Any eras-

ure, alteration, defacement or mutilation of this order renders it void,' with the felonious intent thereby then and there to injure and defraud, against the peace and dignity of the State.

"And the prosecuting attorney aforesaid, upon his oath aforesaid, further informs the court that W. H. Bell *alias* J. W. Clark whose Christian name in full is unknown to said prosecuting attorney, on the 9th day of October, 1906, at the county of Jackson aforesaid, unlawfully and feloniously had in his custody and possession a certain false, forged and counterfeited express money order which was then and there an instrument of writing purporting to be the act of another and which said instrument of writing purported to create a pecuniary demand and obligation which said false, forged and counterfeited express money order and instrument of writing is of the purport and effect following, to-wit: 'Express Money Order N. 207,369. When countersigned by agent at point of issue the Pacific Express Company agrees to transmit and pay to the order of J. W. Clark $50 the sum of fifty No 100 Dollars. Not good for more than the highest printed marginal amount. In no case to exceed fifty dollars. W. R. Carter Treasurer. Countersigned W. H. Bowman, agent. Issued at Warsaw, Mo. State of —— ——. Name of remitter J. W. Clark. Date October 9th, 1906. Any erasure, alteration, defacement or mutilation of this order renders it void,' and the said W. H. Bell *alias* J. W. Clark whose Christian name in full is unknown to said prosecuting attorney, did afterward, to-wit, on the day and year aforesaid, at the county of Jackson, State aforesaid, unlawfully and feloniously with the felonious intent to injure and defraud, sell and deliver the said falsely made, forged and counterfeited express money order and the instrument of writing to Jones Dry Goods Company, a corporation, for the consideration and sum of fifty dollars with the felonious intent to have the same uttered

and passed, he, the said W. H. Bell *alias* J. W. Clark, then and there well knowing the said express money order and instrument of writing to be falsely made, forged and counterfeited, against the peace and dignity of the State.              Isaac B. Kimbrell,

"Prosecuting Attorney.

"Isaac B. Kimbrell, Prosecuting Attorney of Jackson County, Missouri, makes oath and says that the facts stated in the above and foregoing information are true to his best knowledge, information and belief.

"Isaac B. Kimbrell.

"Subscribed and sworn to before me this 21st day of November, 1906.          Andy E. Thomas,

"Clerk of the Criminal Court of
Jackson County, Missouri.
"By Edwin Turner, Deputy Clerk."

Other facts as to the admission and rejection of testimony will be noted in the course of the opinion in connection with the assignments of error. The instructions will also be considered under the assignments of error. The various assignments of error will be considered in the order of the brief of the defendant.

I. There is no merit in the claim that the defendant was forced to go to trial without his witnesses. He made no application for a continuance, although an opportunity was afforded him to do so.

It is next objected that the court erred in permitting the State to cross-examine Mrs. Della Bell, the wife of the defendant, about matters and subjects on which she was not examined in chief and concerning correspondence and communications made between her and her husband, in violation of section 2637, Revised Statutes 1899. The defendant called his wife as a witness and she testified at length in support of his defense of insanity and was permitted without objection on the part of the State or defendant's counsel to detail

many of the statements made by her husband in regard
to the death of his child and his charge of malpractice
against the doctors who had attended the little one in
its last illness. She told of their trip from Kansas
City to Marshalltown, Iowa. On cross-examination she
was asked when they returned from Iowa to Kansas
City where they resided and she said they only re-
mained in the city two days, and then without objec-
tion the prosecuting attorney inquired where they
went when they left Kansas City, and she answered St.
Louis. She was then asked where they stopped while
in St. Louis, and she said at the Union Station for about
two hours. Asked where he was she said they had him
over at the Four Courts. It is now assigned as error
that the State was permitted to prove by her that de-
fendant went from Kansas City to St. Louis. Of course
there was no objection whatever to this. It is now too
late to make it, even if it had been material. [State v.
Mills, 88 Mo. 417.]

Again, it is objected that the prosecuting attor-
ney was permitted to ask her in regard to her knowl-
edge of her husband having a package of money orders.
In regard to this she testified without objection that
she knew he had three money orders when he was ar-
rested in St. Louis, but when she was asked how she
knew this, the counsel for the defendant did object on
the ground that she had not gone into this matter in her
direct examination. But the court ruled that it was
proper, and in her answer she stated that the officer
told her about the checks and she had seen them in her
husband's pocket. She was also examined at length
as to whether her husband said anything to her about
cashing one of these money orders at Jones Brothers'
and at Mitchell's in Kansas City, and she answered
that he did not. She was also interrogated as to letters
which she received from her husband over the excep-
tion of the defendant and she testified that she had

received letters from him and burned them promptly after receiving them. It is clear, we think, that the testimony obtained by this cross-examination was not upon matters that Mrs. Bell had testified to in her examination in chief, and as to the letters which passed between her and her husband it was clearly prohibited by the statute which forbids either husband or wife to disclose confidential communications. The testimony obtained from her that she saw these blank express money orders in the possession of her husband at St. Louis and before that time in his pocket, was very material testimony tending to establish the guilt of the defendant. [State v. Willis, 119 Mo. 485.]

This witness was also examined at great length as to the conferences she had had with the counsel for the defendant at the residence of the latter before the trial over the objection of the defendant and his counsel. She had a perfect right to consult with her husband's counsel for the preparation of his defense and the State had no right to make her disclose the confidential conversations between her and her counsel and the objection to this evidence should have been sustained.

II. There was no error in permitting the State to prove by officer Ghent statements made by defendant to him with reference to the Pacific Express money orders and the manner in which the defendant obtained the same; neither was there any error in permitting Hodgson and Scott, the agents of the express company at Warsaw, Missouri, to testify that the depot or station house in which the express company's office was situated was burglarized a day or two before the money orders were passed by the defendant in Kansas City. The objection was that this evidence tended to show the defendant guilty of another and distinct crime, to-wit, burglary and larceny. The general rule of evidence unquestionably prohibits testimony tending to

prove the defendant guilty of the commission of another and distinct offense from that for which he is on trial, but it is a settled law of this State that if the commission or attempt to commit another crime tends to establish the commission of the crime in question, or in fact is one of its constituent elements, it is admissible just as any other evidence to establish that fact. [State v. Spaugh, 200 Mo. l. c. 595, and cases cited.] Obviously, it was most material evidence to show the presence of the defendant at Warsaw at or about the time these particular money orders were stolen from the office of the express company at that place, in connection with the other testimony that on the day before these orders were uttered and passed by the defendant in Kansas City, he had purchased another express order for $5 from the agent at Warsaw.

We do not think there is any merit in the objection that the money orders were not admissible because it has not been shown that the express company was authorized to do business in Missouri. The testimony tended to show that the defendant was doing an express business in Missouri and the orders upon their face purported to be the act of the express company by which the pecuniary demand or obligation purported to be created on the part of the said company, and this was sufficient to bring it within the statute, section 2009, Revised Statutes 1899. [State v. Gullette, 121 Mo. l. c. 456.]

Defendant also insists that the court erred in refusing to let Doctor Field and other physicians answer hypothetical questions based on the evidence tending to show the insanity of the defendant. The State objected to the question propounded by the counsel for the defendant on the ground that it did not cover all the testimony in the case and the court sustained the objection. In State v. Privitt, 175 Mo. l. c. 225, it was

said by this court: ''In putting hypothetical questions to an expert witness, counsel for the State had the right to assume the facts in accordance with his theory of them; it was not essential that he should have stated the facts as they actually existed. . . . Nor is such a question improper simply because it includes only a part of the facts in evidence.'' We think, therefore, the objection was improperly sustained on this ground to hypothetical questions submitted to Doctor Field, but the question still recurs as to whether the court committed error in declining to permit the doctor to answer this question. Dr. Field expressly declined to testify as an expert on insanity. While non-expert witnesses may give their opinions as to the sanity or insanity of a person after stating the facts upon which they predicate their opinion, it is conceded by all courts that an expert may give his opinion as to the sanity or insanity of a given person upon a hypothetical statement of the facts, but the competency of the witness as an expert must be first satisfactorily shown to the court. [Graney v. Railroad, 157 Mo. 1. c. 680.] In Carr v. Northern Liberties, 35 Pa. St. 324, it is said: ''Matter of opinion is entitled to no weight with a court or jury, unless it comes from persons who first give satisfactory evidence that they are possessed of such experience, skill or science in such matters as entitles their opinions to pass for scientific truths.'' It has sometimes been said that the opinion of the witness as to his own qualification is irrelevant and carries no weight with it, but we take it that this was said of witnesses who professed to be experts without any evidence that they had the qualifications as such, but when a witness declines as Dr. Field did to testify as an expert, and the only evidence tending to show that he was an expert on insanity was that he was a physician of some twenty-five years' practice, without any showing that he ever had any occasion to treat patients

for insanity or had any experience in that particular branch of his profession and he himself declined to testify as an expert, we think that his answer to the hypothetical question should have been excluded on the ground that he had not been shown to be an expert, and therefore was not competent to speak on that subject.

III. Defendant also complains of the action of the court in refusing to require Dr. Schaffer, a physician and witness for the defendant, to answer a question as to whether a certain incurable disease after running six or eight months or a year, would cause paralysis. When this question was propounded to the witness he answered that that was a specialized question and he expected to receive remuneration if he was required to give expert testimony. And the court sustained the witness in his refusal to answer until he had first received his fee for his opinion as an expert. In so ruling we think that the learned circuit court erred. Whether a physician called to testify as an expert may be compelled to state his opinion upon a hypothetical or other question involving his professional knowledge without compensation other than the witness fees allowed all other witnesses by law, has been a much mooted question. In Burnett v. Freeman, 125 Mo. App. 683, the authorities on both sides of the proposition were carefully collated by Judge ELLISON, and the conclusion was reached by the Court of Appeals that a witness called to testify as an expert, whether a physician or an expert in any other branch of knowledge, could be compelled to state his opinion upon a hypothetical or other question involving his professional knowledge without further compensation than that allowed by law to other witnesses. Said the court: "It is the duty he owes to the State in aid of its orderly existence and in return for which he enjoys its protection and the administration of its

laws in his behalf; not least of which would be the compulsion of other experts, whether they be the man who practices a profession, the artisan, the artist, the tradesman or other person to come to his aid when needed in litigation in which he might unfortunately be involved. . . . It should be remembered that the duty the expert owes to the State, as a performance of citizenship, rather than a rendering of service to an individual, pertains to an obligation to give the court the benefit of the knowledge he has in store at the time he is called upon. He cannot be required to especially fit himself for lines of inquiry. He should not be expected to make examinations, perform professional service and the like. For that is not the office of a witness. He could not be compelled to do that any more than an ordinary person, with no knowledge of the facts pertaining to a case, should be required to go and post himself so as to become a witness." After a full consideration of the various cases and the very satisfactory opinion of the Court of Appeals, we think that the Court of Appeals reached the proper conclusion on this question and supported it by satisfactory reasoning. [Ex parte Dement, 53 Ala. 389; Summers v. State, 5 Tex. App. l. c. 377; State v. Teipner, 36 Minn. l. c. 537.]

IV. It is also assigned as error that the circuit court erroneously declined to instruct the jury to acquit the defendant on the State's evidence on the ground that there was no testimony to prove that the defendant wrote or caused to be written the express money order described in the information. But we think there was no error in submitting the cause to the jury under proper instructions. The evidence tended to show that a day or two prior to the uttering of these forged orders by the defendant in Kansas City the blanks of these forged orders were in the possession of the express company at its office in Warsaw, Missouri, and

the defendant was in the city of Warsaw and in the office of the express company and that the office of the express company was burglarized on the night after he had purchased another express money order from the agent at Warsaw for $5, and these money orders that were uttered by defendant in Kansas City were in his possession thus recently after they had been feloniously stolen and taken from the office of the express company at Warsaw. More than that, he stated to officer Ghent that he bought these drafts from a man and gave him one hundred dollars for them at Warsaw. The evidence abundantly demonstrated that the defendant was the utterer of the forged express money orders in Kansas City. In State v. Yerger, 86 Mo. l. c. 38, 39, this court approved the decision in Commonwealth v. Talbot, 2 Allen 161, in which the defendant was indicted for forging a receipt and the trial court instructed the jury that the possession of the instrument by the person claiming under it or seeking to derive benefit from it, was strong evidence tending to show that he made the false signature or caused it to be made, and this instruction was expressly approved by the Supreme Court of Massachusetts. Upon a like state of facts where the forged instruments were found in the hands of the accused, similar rulings have been made in other States. [See authorities cited in State v. Yerger, 86 Mo. l. c. 39.] As was said in the last-cited case, "Bishop treating of this point and of the current of the American authorities in respect thereto, remarks: 'They seem to indicate that, generally, the possession of forged paper, or, at all events, the uttering of it in the county where the indictment is found, is cognate evidence to be addressed to the jury, that the forgery of the paper was committed by the defendant in the same county.' [2 Bishop's Crim. Proc., sec. 433.]" So that the facts in evidence as to the presence of the defendant in the county

where the blank money orders were stolen from the express office, his appearance with them on the next day in Kansas City and his uttering of the same, taken in connection with his improbable story of having purchased the same for one hundred dollars in Warsaw, fully justified the court in submitting the case to the jury and in refusing to direct the acquittal of the defendant.

V. As to the assignment that the court failed to define the crime of forgery, we think there is no merit in the point. The first instruction given by the court sufficiently defined the offense. Certain it is that the defendant cannot complain that the court did not specifically tell the jury the effect of the evidence tending to show the uttering of the said money orders by the defendant.

There is nothing in the record tending to support the ground of error to the effect that the jury was allowed to separate.

The plea of insanity was submitted to the jury under instructions often approved by this court and left nothing to be desired under that subject.

As to the assignments assailing the sufficiency of the information, we think there is no force or merit in the objection. The information follows the statute and specifically alleges the time and place where the offense was committed and sets forth the forged instrument in full.

For the errors noted in excluding the hypothetical questions to Dr. Schaffer, and in holding that the defendant must incorporate all the evidence adduced in its hypothetical question, and for permitting the cross-examination of Mrs. Bell as to matters to which she had not testified in her examination in chief, and as to confidential communications between her and her

husband, the judgment must be reversed and the cause remanded for new trial, and it is so ordered.

*Fox, P. J.,* and *Burgess, J.,* concur.