THE STATE v. EDGAR SCHNEIDERS, Appellant.

**Division Two, June 23, 1914.**

1. **VERDICT: Contradictory: Misprision: Query.** If the first count in the indictment charged forgery in the third degree, and the second did not so charge, but charged the uttering of the forged note, and the verdict finds "the defendant guilty of forgery in the third degree, as charged in the second count of the indictment," should the verdict be upheld by casting out the word "second" as being a mere clerical error, or be held bad for that it is contradictory and indefinite?

2. **INDICTMENT: Forgery: Name of Simulated Person.** Ordinarily the indictment should state the name of the person whose act the alleged forged instrument purported to be, and the name of the person in whose favor the purported obligation is created

—and where there are five names on the instrument, three of which are genuine and only two of which are claimed to be forged, the indictment should name those two.

3. **VENUE: Named Street in State: Judicial Notice.** The court cannot take judicial notice that "730 Chestnut Street" is in the city of St. Louis or in the State of Missouri; and proof that the forged note was uttered at "730 Chestnut Street" is not sufficient proof of the venue.

4. **ARGUMENT OF COUNSEL: Denouncing Defendant: No Rebuke.** Counsel in arguing a case to a jury may use invective, and latitude in characterizing a monstrous and heinous crime is allowed; but the invective and latitude should be based upon the facts of the case. Where there was no proof that defendant was a perjurer or suborner of perjury or was a crook, and no rebuke by the court or ruling upon defendant's objection, statements by the State's counsel in his argument to the jury that defendant was a "perjurer" and a "crook" and a "sneak" were prejudicial error.

5. **FAIR TRIAL: To a Guilty Defendant.** Although defendant is very probably guilty, he is entitled to a fair trial. His guilt ought not to be assumed.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

REVERSED AND REMANDED.

*Hudson & Hudson* for appellant.

The circuit attorney in his closing argument to the jury was allowed by the court, over the objections of the defendant, to heap odium and invective on the head of the defendant in the presence of the jury by calling him such names as ''crook,'' ''scoundrel,'' ''whiner,'' ''perjurer,'' ''maudlin crook,'' ''sneak,'' and other vile and insulting epithets. State v. Prendible, 165 Mo. 329; State v. Fischer, 124 Mo. 464; State v. Kring, 93 Mo. 595; State v. Jackson, 95 Mo. 653.

*John T. Barker,* Attorney-General, for the State; *Sutton & Huston* of counsel.

(1) The indictment follows the language of the statute and the approved forms and is sufficient. Secs.

4651, 4656, R. S. 1909; State v. Mills, 146 Mo. 195, 204; State v. Chissell, 245 Mo. 554; State v. Paul, 203 Mo. 683; State v. Watson, 65 Mo. 117; State v. Carragin, 210 Mo. 354. (2) The defendant was convicted under the second count of the indictment, which is bottomed upon Sec. 4656, R. S. 1909. Every element of the offense charged is fully substantiated by the evidence. State v. Chissell, 245 Mo. 549; State v. Mills, 146 Mo. 195; State v. Watson, 65 Mo. 115; State v. Carragin, 210 Mo. 351. (3) This court has uniformly refused reversals on account of the use of epithets where such epithets were suggested by and related to the facts in evidence, or called forth by the character of the crime, as disclosed by the evidence, as it has uniformly condemned mere abuse not related to or justified by the evidence. State v. Rasco, 239 Mo. 580; State v. Brooks, 92 Mo. 589; State v. Allen, 174 Mo. 698; State v. Zumbunson, 86 Mo. 113; State v. Gartrell, 171 Mo. 512; State v. Miles, 199 Mo. 533; State v. Emory, 79 Mo. 463; State v. Griffin, 87 Mo. 615. The character of the crime committed by defendant, and the artful machinations employed by him to accomplish his purpose, as shown by the evidence, tended strongly to characterize him as a "crook," and we see no reason why the prosecuting attorney should not as well call to the attention of the jury this fact as any other fact deducible from the evidence in the case. A great deal has been said in condemnation of attempts to move the passions of jurors by abuse of prisoners on trial; but there is no reason to condemn, or even criticise, a prosecuting officer for endeavoring to arouse in the jurors a righteous wrath against crime and criminals, by the strongest denunciation and fiercest invective, which the character of the crime as disclosed by the evidence will justify. State v. Miles, 199 Mo. 547. (4) The verdict finds the defendant guilty of forgery in the third degree, as charged in the second count of the indictment, and assesses his

punishment at imprisonment in the penitentiary for a term of two years, and we are unable to see what more could be required. The verdict is sufficient in every particular. State v. Shoemaker, 7 Mo. 177; State v. Carragin, 210 Mo. 369.

FARIS, J.—From a conviction in the circuit court of the city of St. Louis of the crime of forgery in the third degree, and a sentence therefor to imprisonment in the penitentiary for a term of two years, defendant has appealed.

The indictment contained two counts; the first of which charged him with forging a certain promissory note, and the second thereof with uttering said forged note.

The facts in the case as we gather them from the record, are that the Industrial Loan Company (hereafter for brevity called Loan Company), the payee in the note said to have been forged and uttered, is a corporation under the laws of Missouri and engaged inferentially in the city of St. Louis in the making of loans in small sums, seemingly to persons of small means, which loans are agreed to be repaid in weekly installments. In order to procure a loan it is necessary for the applicant therefor, who in this case was the defendant, and who is styled "the maker" in the note he is required to make, and "the holder" in the contract in which he is required to enter into, to sign an application for such loan, which application must also be signed by two guarantors who obligate themselves to pay, in the event of the borrower's default. The note made is also required to be signed by such guarantors, who are styled therein "co-makers."

About the 8th of January, 1913, defendant being desirous of obtaining a sum of money approximating $200, for the purposes, as he contends, of meeting pressing demands and of procuring medical treatment for a small son, or as the State on the other hand contends,

for the purpose of procuring the signing of a bail bond for the brother of defendant then in jail on the charge of embezzlement, made an application to the Loan Company for a loan in said sum of $200. This application was signed by F. E. Thorwegen and Joseph M. Press. The latter testifies that he signed this application himself and that his name is "Joseph H. Press;" it appears in the record as "Joseph M. Press," and he swears he was in the habit of signing his name as "Joseph W. Press." The application for this loan was either written by or in the presence of said Press.

Just here we would as well say that there is no contention by the State that any other names on this note, except that of Joseph H. Press and J. W. Breen have been forged by defendant or anyone else.

The proof in the case shows that after the application for this loan was made out and signed by said Press he agreed to sign and intended later to sign the note. This note was afterward presented to him, but since the time of its presentation to him for his signature was not within business hours, he declined to sign it at that time, but requested defendant to come again the next day. Afterward, he says, he was told by defendant that he had gotten the matter through without the necessity of having the witness Press sign it. Defendant contends, and this is his defense as to this signature, that Press did sign this note and as to him there is no forgery.

After the note was signed by the defendant, by the latter's wife, Helen Schneiders, and F. E. Thorwegen, all of whom, as stated, are *bona fide* signers and touching none of whom is there any contention of forgery, it was presented to the Loan Company containing also the name thereon of "Joseph M. Press." The Loan Company took time to investigate the standing of the maker, as well as the co-makers, and after making such investigation and laying, as the cashier thereof testifies, the matter of this loan before the Loan Com-

pany's directors, defendant was requested to obtain further security, which he did, or pretended to do by placing thereon the name of J. W. Breen. Subsequently the note was delivered to the Loan Company with the names of said Press and said Breen thereon.

The defense as to the alleged forgery of the name of J. W. Breen is, that his name was not on this note when it was delivered to the Loan Company. A number of witnesses, however, called by the State and who are connected in divers capacities with the Loan Company, testified that the name of Breen was on the note when it was delivered to them by defendant. Upon delivery of the note it was discounted at the rate of six per cent for a year and defendant paid by a check the sum of $188, on which check he obtained the cash.

The testimony of J. W. Breen, whose name the State contends was forged on said note, is in substance that he never signed his name thereon and was never asked by defendant to do so, but that he did write a letter of recommendation to the Loan Company, which letter was offered by the State. The witness Breen further says that upon receiving notice from the Loan Company of defendant's default in making his payments, he immediately notified the Loan Company that he had not signed the note and he also notified defendant and asked for an explanation, and that shortly afterward he met defendant in an office building in St. Louis and defendant said to him, "I suppose you want to kill me," and the witness replied, "No, I am sorry for you." This witness also testified that he was familiar with the hand-writing of defendant and that the signature of witness's name upon the alleged forged note was not, in his opinion, the writing of the defendant.

The witnesses Arthur A. Blumeyer and Alice Miles, the first of whom is cashier and the other a stenographer for the Loan Company, both testified for the State that defendant brought the note into the office

ef the Loan Company on January 8, 1913, and that
when the note was delivered it contained the names
of both Press and Breen, signed thereto as "co-
makers."

Defendant testifying for himself corroborates the
facts shown by the State down to the point where the
note was given him by the Loan Company for the pur-
pose of having it signed by himself and his co-makers.
Thereafter he said he saw Mr. Thorwegen and Mr.
Press and that all three went to defendant's home to-
gether and signed the note. To corroborate his defense
that the witness Press did in fact sign the note, he
called Ella Schneiders, the wife of his brother, and
his son Arthur Schneiders, a boy aged some eleven
years, both of whom testified that they saw Press mak-
ing out at the home of defendant certain papers, which
were called while the work of preparing the same was
progressing, "co-maker's papers," and both of these
witnesses testified that Press did sign this note. Upon
cross-examination, however, it becomes somewhat
doubtful whether much credence is to be placed upon
this phase of their testimony, since the witness Press
himself admits signing the application, and since the
testimony of these two witnesses shows pretty clearly
only one act of signing of the witness Press on this
occasion. Thorwegen, the other alleged witness of the
signing of the note, for some reason left muddy in the
record, did not testify in the case.

Returning to the testimony of defendant himself,
he admits that J. W. Breen did not sign the note, but
he says that the name of Breen was not thereon when
he delivered the note to the Loan Company and got
the money on it. The defendant further testifies that
he loaned the witness Press $35 in order to get Press
to sign the note in question and that Press had not
repaid this sum at the time of the trial. Defendant
also relates in his testimony certain domestic matters,

as explanatory of the hostility toward him of the witness Press.

The verdict of the jury sets out that defendant was found guilty of *forgery in the third degree,* but further states that he was found *guilty on the second count* of the indictment.

The only proof in the record as to where the matters and things complained of in this prosecution occurred, appears from the testimony of the witnesses Press and Breen. Press having stated that the blank note without any signatures whatever thereon, was presented to him by defendant with the request that he sign it, and that he did not sign it, was thereupon asked by the State where this matter occurred. He replied that it took place in the city of St. Louis and State of Missouri. Likewise the witness Breen having testified for the State that he never saw the note in question and that he never signed the same, and that he had never been asked by defendant to sign it, but that he had written a letter of recommendation of defendant to the Loan Company, was asked whether the matters and things about which he testified had occurred in St. Louis and he answered that they did. The testimony of the witness Blumeyer, the cashier of the Loan Company, merely shows that the said company is located at 730 Chestnut street, and that it is a corporation of this State and that the witness received the alleged forged note on behalf of the Loan Company and as cashier thereof, but the record nowhere shows that the note was either forged in the city of St. Louis, nor does it show, except by whatever vague inference arises from what we have set out, that it was uttered in the city of St. Louis.

The above facts we deem sufficient, with the aid of what we shall say in the opinion, to make clear the points therein discussed.

I. Many points are urged upon us for the reversal of this case. Among these it was urged in the

**Indictment: Forgery.**

motion in arrest that the first count of the indictment, being that count upon which defendant was found guilty, is not sufficient to charge defendant with the commission of any crime against the law. In passing we may say that the mistake of the trial jury in preparing their verdict has misled learned counsel for the State into making the statement that the conviction of defendant was upon the second count, that of uttering the alleged forged note as true, knowing the same to have been forged. This verdict says: "We, the jury in the above entitled cause, find the defendant *guilty of forgery in the third degree,* as charged in the *second* count of the indictment," etc. The second count of the indictment did not charge forgery in the third degree; the *first* count did so charge him. So if we are to uphold this verdict we must cast out the word "second" as a mere clerical error, and write therein the word "first," or we must say the verdict as rendered by the jury is bad, for that it is contradictory and indefinite. Upon this point, however, we need not and do not now pass, farther than to justify our taking issue with learned counsel as to which crime defendant was in fact convicted of. This identical tangle likewise occurs in the judgment of the learned trial court. As we must reverse the case for other reasons, and as these misprisions will not necessarily occur again, we need not now pass upon them.

Returning to the charging part of the first count, which sought to charge forgery in the third degree, we note that, formal parts and parts common to all indictments omitted, it says: "That Edgar Schneiders, on the 8th day of January, 1913, at the city of St. Louis aforesaid, feloniously and wilfully did forge, counterfeit and falsely make a certain false, forged and counterfeited promissory note, which said prom-

issory note was then and there an instrument of writing *purporting to be the act of another,* and which said instrument of writing purported to create a pecuniary demand and obligation, which said false, forged and counterfeited promissory note and instrument of writing is of the purport and effect following, to-wit:'' (Here followed a true copy of the instrument alleged to have been forged, and following same, the ordinary and usual allegations of a good indictment under section 4651, Revised Statutes 1909.)

We think that ordinarily section 22 of article 2 of our Constitution requires a more certain and definite statement of the name of the person whose act the alleged forged instrument purported to be, as also ordinarily (though on the latter point in the instant case the setting out of the instrument in full made unnecessary what we are next to say) the person in whose favor such obligation purported, by the forged instrument to be created. The indictment here merely says that the instrument purported *"to be the act of another."* (Italics above all ours.) The names of defendant, of defendant's wife and F. E. Thorwegen, were not forged; only as the issue is and as the State contends, were the names of Press and Breen forged. Good pleading requires an apt allegation of this fact, as practically all of the approved precedents under said section 4651 have it. [Kelley's Crim. Law, sec. 780; State v. Paul, 203 Mo. 681; State v. Carragin, 210 Mo. 351; State v. Chinn, 142 Mo. 1. c. 511; State v. Jackson, 90 Mo. 156.] We are aware that an indictment very similar to that here in question, in that it merely said the instrument of writing purported ''to be the act of another,'' was held good in State v. Bell, 212 Mo. 111; but there the whole instrument was forged; there was but one signature and that one forged. Here in the instant case, even upon the theory of the State, only two signatures out of five were forged; the other three were *bona fide.*

It might well be that under the facts in the case of State v. Bell, supra, the indictment there passed on fully met the constitutional right guaranteed to an accused person "to demand the nature and cause of the accusation." [Sec. 22, art. 2, Constitution.] For there, since there was but one name forged as alleged maker of the forged instrument and the instrument itself was set out in full in the indictment, it thus showed whose act the forged instrument purported to be. It may well be that some such view was in the mind of the learned judge who wrote the opinion in State v. Bell, supra. But in the instant case there was nothing upon the face of the first count of the indictment or upon the record to apprise defendant that he was to be tried for forging the names of Press and Breen. We need not pass upon the question as to whether the indictment is fatally bad; we yet hold that it is not in harmony with the great weight of precedent, and think that if defendant is to be retried, the charge, if the State is so advised, should be made to conform to the precedents and the facts.

II. There is no sufficient proof of venue in the case, unless we notice judicially that 730 Chestnut street is in the city of St. Louis. The proof shows that the note in question was delivered to the Loan Company and that the Loan Company is a corporation of Missouri and has its office at 730 Chestnut street. The Chestnut street in question is not shown to be in St. Louis, or necessarily in Missouri. The proof shows that the blank note without any signature whatever thereon, was exhibited to the witness Press in the city of St. Louis, but it was then not a forgery; it was but a piece of blank paper, and Press would as well have been shown the writing tablet upon which defendant afterward wrote a forged note. As we are not permitted to judicially notice that the Chestnut street mentioned in the evidence is in the city of

*Venue.*

St. Louis (Woodson v. Railroad, 224 Mo. 685; Vonkey v. St. Louis, 219 Mo. 37), we are not able even to infer venue from this record, much less find it to be shown thereby.

III. Strenuous complaint is made by defendant touching the remarks of the learned State's attorney. We set out below a fifty-six line excerpt from the closing argument of counsel to the trial jury. This last speech of the learned assistant prosecuting attorney consisted in all of ninety-seven lines in the original record. Of that ninety-seven lines we set out fifty-six in the below excerpt, as also the objections and exceptions of defendant, to-wit:

Argument of Counsel.

"Mr. Maroney: Gentlemen, I am going to let you have all of these papers. Gentlemen, that is not the ordinary custom, but when you are comparing signatures just take the signature of Thorwegen signed to that application and signatures of his father, or what is supposed to be his father's, on this bond, and you will see where $200 went. If you will step around here after a while we will show you Mr. Thorwegen. You need not smile. He will be around all right, and he will be here for keeps.

"I want to say to you gentlemen of the jury that any man that will falsely swear as did this defendant, I let him have plenty of rope on the stand. The whining man sitting there is just the kind of a sneak that would come in here and besmirch his wife for the purpose of saving his own hide, just the kind of sneak that would have his own child take the stand and perjure himself to save him. I have had lots of experience and I am somewhat of a judge of men; I never in my life saw a defendant that would besmirch his own wife, perjure himself and family, that wasn't guilty.

"Counsel for the defense objects to the statement of the circuit attorney.

"Mr. Carter advised you that he might have done this to get his brother out. I want to say to you 'that the actions of these courts are too sacred and the security of the general public and tax-paying community is altogether too sacred to have one crook committing forgery to get another crook out of jail. We have something to do here besides listening to the maudlin weeping of a crook; you have yourself and family and the community to consider, and you have to stop crime; that is your business, not mine.

"Counsel for defendant object to the remarks of the circuit attorney.

"It is not bothering me any, but I do not like to have a lawyer appeal to twelve jurymen and have the defendant sit here and weep with the expectation that that jury will perjure themselves to save a crook. I want to say to you that it is your affair, not mine. You are the State of Missouri. I want to, say to you that the exhibition brought into this case is an appeal to maudlin men, not real men, because anything that will get behind a skirt to save himself is a coward at heart and it takes a coward to do the sneaking work of forgery. If he gets caught he only whines. You never saw a highwayman or burglar ever do any whining; you can hang one of them and they would not even bring a prostitute to save them; they would not bring in a prostitute and involve her in the case to save their own neck. I want to say to you men in conclusion if you permit yourselves to be swayed by such efforts for sympathy here that you simply do this, you perjure yourselves the same as if you took the stand and did it.

"I want to say to you that you cannot too severely punish him. When you look over these papers you have there I do not think twelve men can come up here and say men like Blumeyer or a girl like that, or a man like Rohan, or Mr. Breen, who testified in the

case, are perjurers and liars and this crook is a decent man.

"Mr. Carter: We want to object to this entire speech; he has called this man a crook and points to him as a scoundrel; under the evidence he has been presumed to be innocent until his guilt is established beyond any question of doubt. There is no evidence to show he ever committed a crime.

"Mr. Maroney: If this evidence has not proved him to be a crook, I have failed in my duty.

"To which objection of the defendant's counsel the court did not rule; to which action of the court in not ruling on the objection, and in not rebuking counsel for the State, defendant duly excepted at the time."

We think that in this case the language of the prosecuting attorney, viewed in the light of the court's failure to rebuke him, or even to rule upon the several objections made, constitutes reversible error. [State v. Webb, 254 Mo. 414; State v. Baker, 246 Mo. l. c. 376; State v. Hess, 240 Mo. l. c. 160; State v. Spivey, 191 Mo. l. c. 112.] Our attention has been called to many cases wherein it is averred equally as strong language was used as was used in the above excerpt. [State v. Rasco, 239 Mo. l. c. 580; State v. Allen, 174 Mo. l. c. 698; State v. Zumbunson, 86 Mo. l. c. 113; State v. Gartrell, 171 Mo. l. c. 512.] These latter cases will be found for the most part to fall into one of the below three classes, (a) where the court sufficiently rebuked the State's attorney, or (b) insufficiently rebuked him, and defendant failed to except to the insufficiency thereof, or (c) where there was some basis in the proof for the language used by the prosecuting attorney. Here there was neither rebuke by the court nor proof in the record that defendant was a perjurer, or a suborner of perjury or that he was a "crook," but on the contrary he had never before been charged with any crime. The evidence adduced by the State

in two letters, which the State itself offered, so far from showing a bad reputation, tended strongly to show trustworthiness and by inference a good reputation. If the defendant had been an habitual criminal, or if he had ever before been guilty of any offense against the law, there would have been an excusing element based upon the proof for the language of counsel. Some invective may be used, some latitude in characterizing a monstrous and heinous crime is allowed, but the invective and the latitude ought to be bottomed upon the facts or upon some fact in the case. This is practically what our cases in a general way, seem to hold.

It is idle to urge that since the defendant is very probably guilty, it therefore makes no difference whether he was given a fair trial or not. The trial guaranteed by the Constitution, even though not expressly so stated, yet connotes a fair and impartial trial according to the law of the land. The question of guilt ought not to be assumed and the trial of the accused then be had along the lines of a logic which says in effect: What difference does it make how he was tried since he is guilty? Such logic necessitates a begging of the identical question which it is the province of the trial to determine, and it violates the very spirit if not the letter of every safeguard written by the fathers into our Bill of Rights with the intent to protect the life and liberty of the citizen.

In many other respects the rights of the defendant to a fair and impartial trial were but little heeded; but to incompetent evidence offered by the State throughout the case and to forbidden cross-examination of the defendant, either no objection at all was made or insufficient objections were made, thus precluding any review here. The whole record in the case makes apposite what we lately said in State v. Duff, 253 Mo. l. c. 423, as to the dual attitude occupied by the prosecuting attorneys of the State:

State v. Schneiders.

"Questions so clearly incompetent, so verging upon unfairness and so hurtful withal ought not to be asked by any prosecuting attorney. It is the duty of this officer to see to it that the defendant shall have a fair and impartial trial, and that he shall not be convicted by incompetent evidence. [People v. Carr, 64 Mich. 702; People v. Derbert, 138 Cal. 467.] The attorney for the State owes a duty to the State to see that justice is meted out, and to the defendant, that he be given a fair and impartial trial; he cannot square these duties with the act of presuming upon or taking an advantage of his opponent's lack of information touching the technical details of the criminal law. There is much of respectable authority holding that while great allowance will be made by the courts for that zeal which is the natural growth from a hard-fought legal contest, yet if such zeal shall so outrun discretion as to trench upon unfair, oppressive and unjust methods, the court may on this ground alone reverse. [12 Cyc. 571, and cases cited.]"

The defendant is, we assume, since the record discloses neither *supersedeas* bond nor order, now confined in the penitentiary, where he has been more than a year, pending the perfection by his counsel of this appeal. He should have now but some five months more to serve. It is no material kindness therefore to him, so far at least as imprisonment may produce physical suffering, mental anguish being pretermitted, to reverse this case; but upon the facts we can neither read the law nor write it otherwise. Let it be reversed and remanded to be retried in accordance with these views.

*Walker, P. J.,* and *Brown, J.,* concur.