**STATE of Missouri, Respondent,**

v.

**Marvin EASLEY and Ellis Eaton, Jr., Appellants.**

**No. 48093.**

Supreme Court of Missouri,

Division No. 2.

Oct. 10, 1960.

2. (New Rule 79.04.)

Chris Kahmann, Kansas City, for appellants.

John M. Dalton, Atty. Gen., James B. Slusher, Asst. Atty. Gen., Jefferson City, for respondent.

BARRETT, Commissioner.

Marvin Easley, age 21, and his nephew, Ellis Eaton, Jr., age 18, have been found guilty of robbery in the first degree and sentenced to five years' imprisonment. The information appropriately charges the offense of robbery in the first degree. V.A. M.S., Sec. 560.120; State v. Hood, Mo., 313 S.W.2d 661. The information, however, is verified by an assistant prosecuting attorney and while the record recites that "on this day comes the Prosecuting Attorney and in open Court files the following Information," it begins in this language: "Now comes Sam Modica, Assistant Prosecuting Attorney for the State of Missouri, in and for the body of the County of Jackson, and upon his oath informs the Court * * *." Because the information "was not signed, nor made, nor filed, by, nor in the name of, nor on behalf of the prosecuting attorney of Jackson County" it is asserted that no valid information was filed and, therefore, the trial court did not have and could not acquire jurisdiction of the subject matter. As the appellants urge, "no person shall be prosecuted criminally for felony * * * otherwise than by indictment or information" (Const.Mo., Art. 1, Sec. 17, V.A.M.S.; Sup.Ct.Rule 21.01, V.A.M.R.) and, generally, an information must be signed, verified and filed by the prosecuting attorney of the county. Sup.Ct.Rules 24.01, 24.16. But this case is not as if there had been no information filed as was the fact in State v. McQueen, Mo., 282 S.W.2d 539. Here there was an information but it was obviously drawn, signed and verified by an assistant prosecuting attorney. It is not necessary to construe our rules and determine whether, as the definitions say, a "prosecuting attorney" includes "assistant prosecuting attorneys" (Sup.Ct.Rule 36.05), as we understand the statutes governing prosecuting officials in Jackson County (V.A.M.S., Sec. 56.160), "The assistant prosecuting attorneys shall be and are hereby empowered to sign in their own name informations in criminal causes in all courts having juris-

diction in criminal causes." V.A.M.S., Sec. 56.180. In any event the information was not invalid for any of the reasons here urged. 42 C.J.S. Indictments and Informations § 84, p. 945; State v. Johnson, 351 Mo. 785, 174 S.W.2d 139; State v. Falbo, Mo., 333 S.W.2d 279, 284.

The facts, briefly, as the jury could find them were that about midnight on October 17, 1959, the prosecuting witness, Roy Paul Dirck, left his sister's home at 1747 Summit, "here in Kansas City," and walked down to Ninth and McGee, arriving at approximately 12:45. He ate some chili at a restaurant across from the Greyhound Bus Depot, then he went to a tavern in the next block and drank two bottles of beer. The tavern closed at 1:30 and he went "across the street to the latrine" in the Burlington Bus Depot. While in the rest room Easley "came over" and inquired whether he was a city detective and upon being informed that he was not "he asked me if I was out for a good time," and Dirck said, "Maybe I am and maybe I am not." Easley informed Dirck that he had a room at the Ten Oaks Hotel, Dirck did not say "if I would or wouldn't" go to the hotel with him but "I figured he had a woman at the room" and he walked along with Easley "around the corner to Tenth," and followed him into the Ten Oaks Hotel. At the room door Easley said that the door was locked, "so he reached in his pocket to get the key to unlock the door, and about that time the door in back of me opened and I stepped aside to let whoever it was come through. I didn't know who it was, and this party pushed me back against the wall * * *." In further describing the encounter Dirck says that Easley held "a sharp instrument" against his throat and said, "If you scream or holler, I will kill you." Then he continued, "By that time Mr. Easley started toward my pants pocket and I slumped to the floor and the boys—Mr. Easley said, 'We have all we want, let's get out.' So they left."

Dirck waited a few minutes, "took out" towards the bus station and just around the corner encountered two detectives who stopped the appellants as they came out of the Greyhound Bus Station. The detectives took Dirck's billford from Easley's shirt pocket, also a beer can opener (presumably the sharp instrument held against Dirck's throat) and one of his cigarette lighters from Eaton. Later the police found "large sums of currency on them" in five and one dollar bills. Dirck said that he had $63 in five and one dollar bills in his pocketbook and when asked, "Did you lose anything else that evening?" replied, "I lost two cigaret lighters, wedding band, car key and house key." Easley claims that he had earned and had on his person $125 that evening and Eaton claims that he had earned and had in his possession $45. As to the billfold Easley says that as he and Eaton walked south on Oak Street, at the corner of Tenth Street, he saw "this billfold on the sidewalk, so naturally I picked it up and the inside contained a cigaret lighter, nothing else * * * no money or anything else in the billfold. So I stuck the cigaret lighter in my pocket and the billfold in my shirt pocket."

In their brief here the appellants contend that the court erred in submitting the case to the jury upon this record because there was no evidence whatever of a larceny, an essential element of robbery (46 Am.Jur., Sec. 6, p. 141), and no evidence from which it could be inferred that a larceny had been committed, "the evidence being affirmatively to the contrary and to the effect, not that anything had been stolen from Roy Paul Dirck * * * nor from any other person, but that said Dirck had lost two cigarette lighters and $63.00 in money." It is not necessary to consider just what the word "lost" means to state's counsel or to Dirck, they did not mean or use the word in the sense "that the money (the billfold or cigarette lighters) was lost in reality" (State v. McCann, 19 Mo. 249, 252), so that they were not the subject of larceny. Aside

from the context of the questions and answers, the appellants had Dirck's billfold and cigarette lighters, if not his money, in their possession when arrested fifteen or twenty minutes after their encounter in the Ten Oaks Hotel (77 C.J.S. Robbery § 46(5) (c), p. 493) and if, as the jury could find, either of these items was taken from his person, as he plainly indicated, the felony of robbery was established regardless of the value of the property taken. State v. Gabriel, 342 Mo. 519, 116 S.W.2d 75.

Also in connection with the substantive merits of the case the appellants urge that there was no evidence from which it could be found or inferred "that the alleged robbery was committed in the state of Missouri" and therefore it is said the court did not have jurisdiction of the subject matter. Dirck's testimony was set forth in the beginning and it is not necessary to repeat it, it is sufficient to say that the state did not prove by direct evidence that Tenth Street, or Eleventh Street, or Oak Street or the Ten Oaks Hotel were in Jackson County or for that matter that Dirck was robbed in Jackson County. And since it is urged that the court may not judicially know that these streets are in Jackson County (State v. Schneiders, 259 Mo. 319, 168 S.W. 604) it is said that there was no proof of venue. Assuming that the state's evidence did not circumstantially establish venue, the appellants established it beyond question. Easley, in accounting for his movements, said that his brother and two nephews "wanted me to go to Kansas City, Kansas, with them to Steve's Tavern, and we went over there on 24 Highway in Kansas City, Kansas, and we went to Steve's Tavern and stayed there until about 11:00 or 11:15, and came back to Kansas City, Missouri. We got here about 11:30 and we parked the car on Ninth and Locust, and I went from the car to the Rainbow Club on Ninth and Oak, and it was about 1:30, about closing time, when I left." It was then that he claims to have found the billfold on the sidewalk. Repeatedly Easley and Eaton said that they went to Kansas City, Kansas, but "we went over to Kansas to a bar, and we stayed there and left there around 11:10 and started back to Kansas City, Missouri, got back to Kansas City, Missouri, around twenty to 12:00, or quarter to 12:00." Thus, obviously, if they robbed Dirck they have established that the offense was committed in Jackson County, Missouri. 22 C.J.S. Criminal Law § 185w, p. 295; State v. Hartwell, Mo., 293 S.W.2d 313; State v. Kenyon, 343 Mo. 1168, 1184, 126 S.W.2d 245.

■ In connection with the testimony, particularly Dirck's, it is urged that the court erred in excluding evidence offered by the defendants, the testimony of persons who heard Dirck testify at a former trial and at the preliminary hearing. In their briefs it is said that the offer was to prove that at former hearings Dirck had testified that his reason for going with Easley to the Ten Oaks Hotel was "that he wanted to know what said defendant had to offer in his room at said hotel," or as Mr. Diemer put it, "I thought he was gay and I wanted to see how far he would go." It is not necessary to detail the precise offer of proof or to consider its purpose other than to say that the object was to impeach Dirck with a prior contradictory statement. In the first place, even in his direct examination Dirck was asked, "And from the conversation and so on, what did you think about?" He replied, "Well, I figured he had a woman at the room." It is not necessary to say whether, for the purpose of impeachment, statements of a witness at a former hearing may be established by the evidence of persons present at the former trial (98 C.J.S. Witnesses § 616(b) (2), p. 626) or whether in the circumstances of this case a proper foundation was laid for impeachment. State v. Thompson, Mo., 280 S.W.2d 838. The reason Dirck gave or the reasons contained in the offer and what Dirck may have previously said about them were indeed collateral if not immaterial in any essential, impeaching or substantive sense and the court did not err in refusing the offers of proof. McCormick, Evidence,

Sec. 47, p. 102; State v. Murphy, 201 Mo. 691, 100 S.W. 414; State v. Beatty, Mo. App., 94 S.W.2d 907.

There are no errors "upon the record" before the court and there being no merit in the briefed assignments of error (Sup. Ct. Rule 28.02) the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.