[No. 1909]

## STATE OF NEVADA, RESPONDENT, v. BERNARD CLARK, APPELLANT.

[149 Pac. 185]

ON REHEARING

1. CRIMINAL LAW—TRIAL—CREDIBILITY OF WITNESSES—QUESTION FOR JURY.

   The credibility of witnesses in a criminal case and the weight to be given their testimony is exclusively for the jury.

2. CRIMINAL LAW—MISCONDUCT OF PRESIDING JUDGE—EVIDENCE.

   Where the guilt of accused charged with murder depended on whether there was a prior understanding between him and a third person who fired the fatal shot, and the state chiefly relied on the fact that accused raised his hand and said "All right," just prior to the shot, to establish concert of action, the action of the court in calling in the jury after deliberating for some time, and ascertaining that they stood numerically 11 to 1, then urging them to reach a verdict if they could conscientiously do so, stating that the trial had been a great expense to the county, and in the presence of the jury denying accused an exception and threatening accused's counsel with punishment for contempt, was prejudicial error.

APPEAL from Sixth Judicial District Court, Humboldt County; *W. H. A. Pike*, Judge.

Bernard Clark was convicted of murder in the second degree, and appealed. Judgment affirmed (36 Nev. 472, 135 Pac. 1083). Rehearing granted, judgment and order reversed, and cause remanded for new trial.

*W. D. Jones*, for Appellant:

Aside from the question whether the remarks of the court to the jury were given in writing, as required by section 355 of the criminal practice act, the language of the court was such as to prejudice the jury against the appellant. If the language means anything, it means that the court was anxious for the jury to agree on a verdict. (*Burton* v. *U. S.*, 49 L. Ed. 489; *Peterson* v. *U. S.*, 213 Fed. 920; *State* v. *Ivanhoe*, 36 Or. 150, 57 Pac. 317; *Randolph* v. *Lampkin*, 90 Ky. 552; *Whitelaw* v. *Whitman*, 83 Va. 40; *State* v. *Bybee*, 17 Kan. 462.)

*Geo. B. Thatcher*, Attorney-General, for Respondent.

By the Court, NORCROSS, C. J.:

Judgment upon a conviction of murder in the second degree was affirmed in the former opinion and decision of this court, reported in 36 Nev. 472, 135 Pac. 1083. Rehearing was granted that further consideration might be given to the case which presented a number of close questions, particularly in reference to the action of the court in calling in the jury after it had retired to deliberate upon its verdict, and the proceedings thereafter following.

For convenience of consideration we will again recite that portion of the record as it appears in the former opinion:

"After the jury had retired for deliberation, and had remained out several hours without reaching a verdict, they were called into the courtroom, and the following proceedings were had:

"The Court—Well, now, I do not want you to state how you stand except numerically. You understand that it is numerals. Don't want you to state to me how you stand—not what you are in favor of. Understand?

"Mr. Foreman—Yes, sir.

"The Court—But I want to know how you stand numerically. Now, be careful. Is it—— Does the balance stand 6 to 6, or 8 to 4, or 3 to 9, or something? What is the result of your last ballot, without stating what it was?

"Mr. Foreman—I understand; 11 to 1.

"The Court—Well, that looks easy. If it is in that condition, and there isn't anything you want of the court, is there, that you know of?

"Mr. Foreman—No, I don't think there is.

"The Court—I do not want any of you to understand, gentlemen, that I wish to suggest in the slighest degree as to what your verdict should be. That is furthest away from my mind. All I want to say to you—to remind you—that, if you can conscientiously do so, it is your duty to reach an agreement as to something or other. The trial has been on here now since the 28th of April,

consuming something over or about three weeks of the court's and attorneys' time, and it has cost Humboldt County a vast sum of money. Now, if you can possibly conscientiously agree upon a verdict, it is your duty to do so. The sheriff will take you to dinner in about half an hour, and I want you to retire to the jury room and go to work.

"Mr. McCarran—If the court please, let the record show that upon the part of the defense we save an exception now to the remarks of the court as trying to induce the jury to arrive at a verdict by offering them inducements along the lines of the expense, which is prejudicial to the defendant.

"The Court—Well, the record will show that the attorney is out of order and has no right to take an exception, and the exception will not be allowed.

"Mr. McCarran—Well, we will try and have that exception allowed.

"The Court—If the attorney is not very careful, he will be in contempt of court. Let the record show that. You may retire to the jury room, gentlemen. Defendant may be remanded."

[1-2] We have been asked to reconsider this phase of the case, particularly in view of the evidence offered upon the part of the state to sustain a conviction. While the question of insufficiency of the evidence to justify the verdict is not raised upon the record, it is contended that the evidence is far from establishing guilt with any considerable degree of certainty, and is of such a character that any error upon the part of the court should be regarded as sufficient to have turned the balance against the defendant; that the conduct of the court in the particular mentioned, in view of the evidence, ought to be regarded as sufficiently prejudicial to warrant a reversal.

Without reviewing the evidence at length and recognizing the well-settled rule that the credibility of the witnesses and the weight to be given their testimony is entirely a matter for the jury, it is proper to say that the evidence against the defendant was largely, if not

entirely, circumstantial.  It was the theory of the state that a conspiracy had been formed between the appellant and three others, who were associated in the location of certain mining property, to kill Sol Hendra, who, with his two brothers and some other parties, also claimed title to the property.  The decedent, together with three other parties, had gone upon the ground to do the annual labor upon the claims.  They were met by the appellant and two of his associates.  The appellant protested against the work proceeding.·

A. M. Williams, one of the principal witnesses for the state, gave the following testimony concerning the immediate circumstances of the shooting:

"When we got there, I told Mr. Hendra and my son to go to work.  *  *  *  Clark said, 'Now you have gone to work, now I have you right  where I want you.  Now, come over to the tunnel and I will unlock that for you.' I then left them standing, myself left Clark, Fuller, Coak, along with my own party, standing near the dump, with Mr. Hendra at work, and stepped up above the cut and dump to the place where there had been work done ·last year.  *  *  *  I then turned around and started back down the hill, and I saw this man, Clark, raise his hand that way (indicating) and say 'All right.'  The next thing I knew I heard the spat of a ball and the whistle of a bullet, and then heard the report of the gun or rifle. *  *  *  When I heard the report of the gun I looked up the hill and I saw a man running with a rifle in his hand.  He was running toward the tunnel and the ore-house and the dump of the Tulula mine.  I heard my son say to Clark, 'You have killed a man, now, tell those men to shot (stop) shooting.'  Clark immediately holloed 'Hey, what the hell are you fellows doing up there?'  He was then running, Clark was, with Fuller and Coak, toward this tunnel and the ore-house and dump, the old dump of the Tulula mine where their tent was.  They disappeared over the hill very quickly, and the man, Fuller, came back over the hill after he had disappeared, he came back over again, back to within fifty or sixty feet perhaps of where

we were, and asked if there was anybody hurt, when Mills told him, 'You can see for yourself, the man is dead.' "

Whether defendant was guilty of the offense charged depended upon whether there was a prior understanding between the defendant and the man who fired the shot from the top of the hill some 160 yards away. The circumstance that the appellant raised his hand and said "All right," just prior to the shot, is the main circumstance in the case relied upon by the state to establish concert of action between the defendant and the one who actually fired the shot. A great deal of testimony in the record, which is very voluminous, is directed to this circumstance. The man who fired the shot appears never to have been apprehended. The defendant and his two companions surrendered themselves to the officers.

Considering the question whether alleged improper conduct upon the part of the district attorney in argument to the jury amounted to prejudicial error, in the recent case of *State* v. *Clancy*, 38 Nev. 181, 147 Pac. 449, 451, we said:

"In any case, whether remarks of the prosecuting attorney in argument amount to reversible error, depends somewhat upon the whole record in the case."

The same reasoning applies to alleged misconduct upon the part of the trial judge. Slight misconduct in one case might justify a reversal, when in another case where the evidence of guilt was far more convincing, a court might properly hold it insufficient to constitute prejudicial error. Misconduct may, however, be so gross that courts will set aside a verdict notwithstanding the evidence of guilt is quite apparent, where such conduct virtually destroys defendant's constitutional right to a fair and impartial trial. (*State* v. *Schneiders*, 259 Mo. 319, 168 S. W. 604.) With this latter character of cases, however, we are not concerned upon this appeal. The views heretofore expressed upon the question under consideration if changed, and we think they should be, should turn upon the fact that in this case the evidence

of guilt is not so potential, but that slight error may have prejudiced the defendant in his substantial rights. Presenting a situation somewhat similar to that involved in the case at bar, is the case of *Burton* v. *United States,* 196 U. S. 283, 25 Sup. Ct. 243, 49 L. Ed. 482. We quote the following excerpt from the opinion of the court by Mr. Justice Peckham in that case:

"Balanced as the case was in the minds of some of the jurors, doubts existing as to the defendant's guilt in the mind of at least one, it was a case where the most extreme care and caution were necessary in order that the legal rights of the defendant should be preserved. * * * We must say, in addition, that a practice ought not to grow up of inquiring of a jury, when brought into court because unable to agree, how the jury is divided; not meaning by such question, how many stand for conviction or how many stand for acquittal, but meaning the proportion of the division, not which way the division may be. Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury. All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to agree could have been said without asking for the fact as to the proportion of their division; and we do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge. Cases may easily be imagined where a practice of this kind might lead to improper influences, and for this reason it ought not to obtain."

See, also, *Peterson* v. *United States,* 213 Fed. 920, 130 C. C. A. 398.

In the case at bar the jury had not reported that they were unable to agree nor had requested further instructions. When brought into court upon the order of the judge and interrogated as to how they stood numerically, they were informed by the judge that the situation, as

presented by the answer of the foreman that the jury
stood 11 to 1, "looks easy, if it is in that condition." The
jury is then reminded of the great amount of time con-
sumed in the trial, and that it "has cost Humboldt County
a vast sum of money." An attempt upon the part of
counsel to interpose an exception to the remarks of the
court is met with the statement that the counsel is out of
order and not entitled to take an exception, and that the
same would not be allowed. Persistence upon the part
of counsel, that his exception should be allowed, is met
with the suggestion that the conduct of the attorney is
bordering closely on contempt.

While it is true that the trial judge advised the jury
that he did not in the slightest degree wish to suggest
what the verdict should be, and that it was the duty of
the members of the jury to agree upon a verdict if they
conscientiously could do so, it is also true that the judge
expressed his opinion that the fact that the jury stood
11 to 1 "looks easy." This expression, taken in connec-
tion with the emphasis placed on the time consumed in
the trial and that it had cost the county "a vast sum of
money," would naturally have a tendency to weigh with
considerable force upon the jury, and especially upon the
mind of a single member who might naturally feel called
upon to cast into the scale as against the defendant the
time and expense of the trial, and that it looked easy to
the judge that the one ought to agree with the other
eleven. It is not always true that the "one obstinate
juryman" is wrong and the other eleven are right, and
it is not any too clear that such is the fact in this case.
It is a right guaranteed to a defendant on trial for a
criminal offense that he shall have the judgment of
twelve men uninfluenced by matters foreign to the evi-
dence admitted at the trial. When the action of the
trial judge in the matter complained of is considered in
connection with the entire case, we do not feel justified
in saying that, notwithstanding, the defendant was not
prejudiced thereby.

The other questions considered upon the former hearing we deem correctly determined.

The judgment and order are reversed, and the case remanded for a new trial.

. Coleman, J.: I concur.

[McCarran, J., having been an attorney for appellant, did not participate.]