## FRANK E. SHARP V. STATE OF NEBRASKA

FILED JULY 1, 1927.   NO. 25538.

1. **Criminal Law:** EVIDENCE: PHOTOGRAPHS. As a general rule, whenever it is relevant to describe a person, place, or thing, correct and accurate photographs or pictures thereof, properly identified, upon sufficient foundation laid, are admissible for that purpose.

2. ———: ———: ———. Where a paper, containing an original impression of the palm print of defendant's hand which would have been competent evidence upon the trial of the case, is shown to have been lost and its non-production properly accounted for, an accurate photograph thereof, properly identified, upon sufficient foundation laid, may be received in evidence in lieu of the original.

3. **Homicide:** MOTIVE: REBUTTAL. Where the state, in a criminal prosecution for uxoricide, as bearing upon the question of motive, introduces evidence covering a period of time prior to the alleged commission of the offense charged, as to the state of mind of the deceased toward the defendant, the frequent occurrence of quarrels and of feelings of hostility and ill will between them, the defendant, upon proper foundation laid, is entitled to have received in evidence letters written to him by deceased within the period of time covered by such evidence of the state, where the letters thus offered contain expressions of endearment, or where the contents thereof fairly support the inference that the relations between the deceased and defendant were good, and these tend to contradict the theory of the state. It is error to exclude such letters.

4. **Instruction** quoted in opinion disapproved.

ERROR to the district court for Lancaster county: MASON WHEELER, JUDGE. *Reversed.*

*M. V. Beghtol* and *Richard F. Stout,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *George W. Ayres,* contra.

Heard before Goss, C. J., Rose, Dean, Day, Good, Thompson and Eberly, JJ.

Eberly, J.

Plaintiff in error, hereinafter called the defendant, was convicted of murder in the first degree and sentenced to death by electrocution. He prosecutes error to have this court review the record of the trial and conviction. The information charges "that Frank E. Sharp * * * on or about the 16th day of March, A. D. 1926, * * * did * * * unlawfully, feloniously, purposely, and of his deliberate and premeditated malice, strike Harriet A. Sharp with a hammer, and as a result thereof she died March 16, 1926." Harriet A. Sharp, deceased, was the wife of the defendant.

Among the errors assigned will be considered only assignment No. 1, pertaining to the admission in evidence of exhibits 17 to 33, inclusive, assignment No. 3, based on the acts of the court in excluding from evidence exhibits 41 to 46a, inclusive, being letters written by Mrs. Sharp to the defendant, and assignment No. 4, predicated upon the giving by the court of certain instructions, on its own motion, relative to the imperative necessity for the jury's agreement on a verdict.

Facts of the record will be narrated only so far as may be necessary to understand the theory on which the objections discussed are urged. It may be said, however, that the body of Mrs. Sharp was found on the morning of March 17, 1926, in a two-seated Ford car owned by the defendant, on the public road two miles north of Havelock, Nebraska. The appearance of her body indicated that she had been murdered by a succession of heavy blows on her skull. On the night before her dead body was found, she left her home in this Ford car with the defendant, intending to go to a dance, pursuant to an arrangement mutually made by the defendant and his wife with certain of their friends. After

leaving the home and while en route to the dance, certain table scraps for use as chicken feed, and a borrowed rake, were left by deceased and defendant at the home of F. A. Wilson. At this time some conversation, unimportant in its nature, ensued at the Wilson home, and about 8 o'clock p. m. the defendant and his wife drove away in the Ford. From then until about 10:30 p. m. the statement of the defendant is the only evidence as to the movement of either Mr. or Mrs. Sharp. At the last-named hour the defendant appeared at the home of Mr. Carey in Bethany, four and four-tenths miles from where the body of his dead wife was subsequently discovered the following morning. In view of the disposition of the case hereinafter made, to here include a recital of all the evidence would serve no useful purpose.

A careful examination of the record before us, however, discloses that the defendant, upon the trial which followed the event narrated, was convicted of the crime charged in the information upon evidence wholly circumstantial in its nature. The nature of this evidence does not militate against the credit to which the proceedings before us are entitled, nor weaken the presumptions which surround them. It would indeed be injurious to the best interests of society if such proof could not avail in judicial proceedings. If it were necessary always to have positive evidence, the testimony of eye-witnesses, how many criminal acts committed in the community, destructive of its peace and subversive of its order and security, would go undetected and unpunished?

"Circumstantial evidence, therefore, is founded on experience and observed facts and coincidences, establishing a connection between the known and proved facts and the fact sought to be proved. The advantages are, that, as the evidence commonly comes from several witnesses and different sources, a chain of circumstances is less likely to be falsely prepared and arranged, and falsehood and perjury are more likely to be detected and fail of their purpose. The disadvantages are, that a jury has not only to weigh

the evidence of facts, but to draw just conclusions from them; in doing which, they may be led by prejudice or partiality, or by want of due deliberation and sobriety of judgment, to make hasty and false deductions; a source of error not existing in the consideration of positive evidence." *Commonwealth v. Webster*, 5 Cush. (Mass.) 295.

This situation, indeed, in the present case, emphasizes the importance of the proper application of the rules of evidence, to the end that matters, improper for consideration by the jury, may be excluded, and that all facts which may shed light on the issues investigated may be received and given proper consideration by the triers of fact.

The first assignment of error made by the defendant is based on the reception in evidence, over the objection of defendant, of exhibits 17 to 33, inclusive. In explanation of these objections, it may be said that an imprint was found on the handle of a hammer, exhibit 14, which was found in the car in which the dead body of the wife of the defendant was discovered. An imprint of the palms of defendant's hands was thereafter secured while he was in custody, to the taking of which he made no objection. Exhibits 17 to 33, inclusive, constitute photographic reproductions and enlargements, made for the purpose of comparison, of the imprint on hammer, exhibit 14, and the palm print of defendant's hand. When these exhibits were offered in evidence, the original palm print of the defendant's hand, prepared by the representative of the state, after the accused was in custody, was not offered, but its loss and nonproduction were properly accounted for, and further evidence received as foundation for the introduction of certain exhibits disclosed that they were accurate and correct in all respects and truly represented the missing palm print.

In view of these facts the objection made to the reception in evidence of that portion of exhibits 17 to 33, inclusive, relating to the palm print of defendant's hand, wholly based on the nonproduction of the original palm print, was properly overruled. *Marion v. State*, 20 Neb. 233; 22 C. J. 913, sec. 1115; 22 C. J. 916, sec. 1118.

Sharp v. State.

It would seem that the defendant could not have been prejudiced by the absence of this original palm print. If error or mistake had occurred in a photographic reproduction of that print, the controlling evidence which would disclose that fact was at all times the defendant's own hand. It may be said in passing that exhibit 14, found in the death car, on which a palm print appears, was received in evidence without objection, as were all photographs thereof.

As to the assignment of error based upon the refusal of the district court to require the county attorney at this trial, upon all applications of the defendant, then first made, to furnish the defendant with a copy of the notes of an oral statement of the defendant taken in shorthand by the employees of the county attorney's office, and by them extended in typewriting, and designated in the record as exhibit 49, it may be said that the question is now wholly moot. It will be seen the case is reversed. The document, exhibit 49, though not admitted in evidence, now forms a part of the bill of exceptions in this case. This bill of exceptions will be, in due time, returned to the clerk of the district court for Lancaster county, Nebraska, and will be preserved by him. The defendant will then be entitled to make such use of exhibit 49 as his judgment may determine and the rules of evidence permit. The question of the right of the defendant to compel the production of the said document in the manner attempted is, therefore, wholly immaterial at this time.

The next assignment of error for consideration is the refusal of the trial court to permit exhibits 41 to 46a, inclusive, to be read in evidence, after proper foundation therefor had been duly laid. These exhibits were letters written by Mrs. Sharp to her husband. They were offered to controvert the theory of the state as to motive. The trial court excluded them on objection of the state, and in this the defendant insists the district court erred.

The question in the form here presented is a new one in this jurisdiction. In view of our statutes relating to

Sharp v. State.

prejudicial error, it naturally involves two elements: First, was the defendant entitled to have these letters, written by his wife, admitted and read to the jury? Second, if the letters were erroneously excluded, was the defendant prejudiced thereby?

The general rule seems to be that on trials involving the charge of uxoricide, letters of deceased, with proper foundation laid, are admissible in evidence on behalf of accused if their contents are such as tend to sustain his contention on the subject of motive.

"Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also original evidence." 1 Greenleaf, Evidence (16th ed.) sec. 162a. "On this principle, in actions for criminal conversation, it being material to ascertain upon what terms the husband and wife lived together before the seduction, or in any other case in which the feelings of either toward the other is material, their language and deportment toward each other, their correspondence together, and their conversations and correspondence with third persons, are original evidence. Such letters and other statements are admissible because credit is given to her for having acted with sincerity at the time." 1 Greenleaf, Evidence (16th ed.) sec. 162d.

"The existence of an emotion—hatred, malice, affection, fear, and the like— is usually evidenced by conduct or by utterances indirectly indicating the feeling that inspires them. * * * A special application is also found in actions for alienation of affections, criminal conversations, divorce, or wife-murder, where the state of affections of the wife to the husband, or of the husband to the wife, becomes material. Here, the declarations of the person as to her or his own state of affections are admissible under the present principle." 3 Wigmore, Evidence (2d ed.) sec. 1730, and cases cited.

"On the part of one accused of having killed his wife as a result of his loss of love and affection for her, and his infatuation for another woman, an affectionate letter

written by the wife to the husband is relevant to disprove motive for the crime." 2 Wharton, Criminal Evidence (10th ed.) sec. 904.

"That love or friendship was the animating motive for given conduct may be shown by the extrajudicial statements made by the person in question." 4 Chamberlayne, Modern Law of Evidence, sec. 2671.

Manifestly, evidence of motive, though admissible in all prosecutions for homicide, is of decided importance in cases where the evidence relied upon for conviction is wholly circumstantial. In the present case the state properly sought to establish criminal motive on part of the defendant. Its witnesses for this purpose were the four stepchildren of the defendant, and his brother-in-law. These, the sole source of this testimony, were the children of the murdered woman by a former husband whose place in the family home the defendant had supplanted, and a witness married to the deceased sister.

It may justly be said that the record fairly reflects the fact that none of these witnesses were friendly to the defendant. A number of them admit considerable animosity toward him. The home of Mrs. Sharp and the defendant was a rooming and boarding house conducted by the former. This business had been carried on at different locations in Lincoln. In this rooming and boarding house, it appears from the record that from ten to thirty persons were continuously cared for and entertained. None of these appear as witnesses for either the state or the defendant. The evidence relied upon by the state on the question of motive tends to prove that frequent and bitter quarrels occurred between Mrs. Sharp and defendant during the year 1925, and, indeed, up until the night of the murder. This evidence also disclosed the particulars and cause of the contention, and, if believed, tended to establish that Mrs. Sharp was of the settled, decided, and persistent opinion that her husband failed to properly contribute to her support, and was constantly reproaching him for this dereliction; that she frequently made threats that she would discontinue the

marital relations existing between herself and defendant, and exclude him from the home, if he did not do better in that regard.

One witness, the husband of a sister of deceased, also testified that while he and defendant were engaged in a paving job, in 1925, in Hebron, Nebraska, he roomed with the latter, and during that time, and at that place, in conversation with witness, defendant had repeatedly spoken of his wife in the most repulsive terms, called her vile names, and threatened to "knock her damn head off." If this testimony is to be implicitly believed, it would strongly support the contention of the state as to the existence of a criminal motive on the part of defendant. It would also justify the inference that the settled opinion of Mrs. Sharp on the subject of support, to which she was entitled from the husband, whether justified or not, and disagreements and quarrels resulting therefrom, were the cause of the complete loss of love and friendship between parties.

If the preceding paragraph reflects the true situation, it was an important element in the state's case. However, this attitude on part of defendant's wife the defendant expressly denied. He insists that no serious quarrels occurred between himself and wife, and expressly denied the charges made by the brother-in-law.

There is some corroboration in the evidence for defendant. There is no evidence in the record that any violence was ever offered by him to his wife prior to the night of the tragedy. The four childern, when testifying to the upbraiding of the defendant by the mother during the quarrels to which they testified, quite often conclude their testimony with the statement that at that time Sharp "never said a thing" in reply.

As evidence to rebut the effect of this testimony as to the existence of a criminal motive, and to corroborate his own denial of bad relations with his wife, and to establish the state of her mind toward him, the defendant offered in evidence exhibits 41 to 46a, which were letters written by his wife to him, all substantially within the scope of time

covered by the evidence of the state on the subject of motive. Each of these letters are started with the words "Dear Husband" or "Dear Frank," and each closes with the words "Loving Wife Harriet" or "Loving Wife." Their contents disclose that they were written by a woman uneducated who had toiled and was still working. She was 48 years old. The letters were not letters of a young girl 16. Still, the reading of them would tend to support the conclusion that they were not written by a woman who had no affection for her husband, or who believed her husband was not properly supporting her or had no affection for her. They mention no trouble between the parties, refer to no disputes, make no demands, the absence of all of which particulars might well lead to the conclusion that the relations between the parties were friendly, and that any serious trouble between the defendant and his wife at the time the letters were written, was nonexistent. These particulars, as well as the general tone of the letters, would so indicate.

Facts involving in some respects the identical principle presented in the instant case were before the supreme court of Indiana in the case of *Pettit v. State*, 135 Ind. 393. This was a prosecution of the husband for the murder of his wife, the state, as proof of criminal motive, relying on the loss of affection for her on part of the husband, and an infatuation for another woman. The Indiana court held that an affectionate letter written by the wife to the husband is admissible to disprove the existence of motive for killing his wife. In the opinion the court say, in part: "Another question arising upon the record is as to the alleged error of the court in rejecting, as evidence for the defendant, a letter from Mrs. Pettit to her husband, containing expressions of endearment. It is urged by appellant's counsel that the letter was admissible, both in rebuttal of the theory of the husband's loss of affection for his wife, and in contradiction of Hickman as to complaints of the wife heretofore given, and of Wilson, that Pettit was neglecting his wife in being from home days at a time without advising her of his whereabouts. * * * From our view

of the question, it was proper to have admitted in evidence the letter of the wife to the husband. The relations existing between the deceased and her husband were naturally and by the theory of the state's evidence necessarily, the foundation upon which the guilt of the defendant was to be determined. While indifference, or even ill treatment by the husband, does not necessarily destroy all the affection of the wife for him, yet the degree of that affection must, to a greater or less extent, depend upon his treatment of her. The relation of husband and wife is peculiar, in that all of the interests of life concern them alike, and are so inseparable from their thoughts of, and affections for, each other, that it cannot be said, as a matter of law, that the estrangement of the husband necessarily destroys the affection of the wife for him. It necessarily follows that the existence of affection for him does not, of itself, preclude the loss of affection by him. Where the relation is the subject of inquiry, and where it becomes proper to investigate the treatment of one toward the other, with a view of determining that relation, it is proper to canvas the treatment of the other toward that one. The treatment by each of the other casts a light into the otherwise dark recesses of the heart of each. The strength of that light is a subject for the jury, and may not be determined, as a question of law. The letter of a wife, with whose murder her husband was charged, though written to a third person, was held admissible 'to disprove the existence of the motive to commit the murder, which the testimony for the state conduced to establish.' "

It would seem that the principles announced in the foregoing case were, in effect, approved, if not adopted, by this court in the case of *Sutter v. State,* 102 Neb. 321, wherein it was held: "Evidence of declarations by deceased of intention to commit suicide, or evidence consisting of the written statements of the deceased bearing upon the question of intention to commit suicide, is admissible in a murder case, if introduced solely to show the state of mind or intention of the one making them, at the time they were

made." And in that case, during the course of the opinion, the following observation was made, which certainly applies to the case at hand: "In such a case as this, where the life and liberty of the accused are at stake, no evidence, whether of declarations or written words of the deceased, which reasonably bears upon the issues should be excluded. Justice and humanity require its consideration."

In view of the issues of fact involved in the testimony before the district court in the instant case, and in the light of the authorities quoted, it would seem that the letters, exhibits 41 to 46a, should have been received in evidence, and that in excluding them the district court erred, which error must be deemed prejudicial.

. The following language, contained in the instructions of the district court to the jury, was excepted to by the defendant: "Again, let me remind you gentlemen, that it is your function to agree. All the evidence that the state and the defendant have procured has been presented to you. To recall these witnesses and to try this case again would be expensive in time and money. It is useless to try cases unless juries do agree. A failure to agree in this case would be quite unfortunate. Do not seek to avoid your duty by failing to agree and passing the buck to some other jury. Witnesses move away, die and forget. Exhibits are lost or damaged. Now is the time to decide this case. So, let me again urge upon you gentlemen, that unless you do return a verdict, you will fail to function as jurymen."

After a careful examination of the record, we are convinced that the above instruction invaded the proper province of the jury, and inevitably exerted too strong a pressure in favor of agreement. This attitude, obviously, was prejudicial to the defendant.

A verdict is the expression of concurrence of individual judgment. The proper functioning of a jury is to be determined wholly by the proper functioning of each individual juror. It involves that from the evidence each individual juror should be led independently and conscientiously to the same conclusion. This unanimous conclusion of

twelve different minds is the "certainty of fact sought in the law." If this required "certainty of fact" does not exist in such degree that twelve reasonable minds, independently and conscientiously, upon due consideration, arrive at the same conclusion, a disagreement is not only a full performance of duty and a complete exercise of a juror's proper function, but is imperative, if the fundamental basis of trial by jury is to be preserved.

So, too, no juror should be influenced to a verdict by fear of personal criticism, possible disgrace, or pecuniary injury. No juror should be induced to assent to a verdict by a fear that a failure to agree would be regarded by the public as reflecting upon either his intelligence or his integrity, or as a failure to properly perform a public duty. Personal consideration should never be permitted to influence a juror's conclusion.

It may also be said that the determination in every jury trial whether the required certainty of fact exists in the necessary degree to justify an agreement is exclusively a question of fact which is for the sole determination of the jury.

The instruction quoted, in effect, peremptorily directing an agreement, invaded and trespassed upon the province of the jury. It determined affirmatively, as a question of law, what it was the constitutional duty of the jury, as a question of fact, to determine, as the conscience of each of twelve reasonable jurors, on due consideration of all the evidence, might individually conclude and direct. Thereby, the defendant was deprived of the full benefit of his constitutional right to a speedy, public trial by an impartial jury.

That other jurisdictions have condemned instructions involving similar principles may be seen in the following cases: *People v. Engle,* 118 Mich. 287; *People v. DeMeaux,* 194 Mich. 18; *Mt. Hamill State Savings Bank v. Hughes,* 196 Ia. 861; *Freeby v. Town of Sibley,* 183 Ia. 827; *People v. Sheldon,* 156 N. Y. 268; *State v. Bybee,* 17 Kan. 462.

It follows, therefore, that, for the reasons given, the

judgment and sentence of the district court must be, and is, reversed, and the cause is remanded for further proceedings in accordance with this opinion.

REVERSED.

ROSE, J., dissenting.

In my opinion the jury in their deliberations and conclusions were influenced by circumstances that told their own story as inanimate witnesses that could not commit perjury or contradict each other or be prompted by passion or fear of consequences. With such evidence before the jury, relating as it did to the issue of guilt, I am unwilling to say they were influenced, or defendant prejudiced, by the instruction on their duty to agree or that their verdict might have been different had the rejected letters relating to the affection of the wife for the husband at earlier dates been admitted.