WILLIAM G. POTARD V. STATE OF NEBRASKA.
299 N. W. 362

FILED JULY 18, 1941.   No. 31133.

*Harry K. Livingston*, for plaintiff in error.

*Walter R. Johnson, Attorney General*, and *Don Kelley*, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

Plaintiff in error was convicted for having obtained the

sum of $1,250 from Harry Armknecht by false pretenses, and was sentenced to serve from one to two years in the state penitentiary. From this conviction and sentence plaintiff in error appeals.

The evidence shows that on June 10, 1939, William G. Potard, the plaintiff in error, called on Armknecht and told him that he had a house bought in Falls City for $1,250 and that he had a buyer who would pay $1,550 for it. He asked Armknecht to loan him the money so he could carry out the deal, and as an inducement agreed to divide the profits when the transaction was completed, which was to be within thirty days. The money was borrowed at a bank and delivered to Potard. The evidence is sufficient to sustain a finding that the facts represented to Armknecht were not true and that he relied upon them as true in making the loan. The defendant admits receiving the money. He says he lost it in the following manner: That he was riding in a car in Kansas City with one Burke, a stranger, that he turned the money over to Burke to procure a deed to a certain piece of property, and that Burke absconded with the money. The jury were, of course, the ones to pass upon the credibility of the witness and the reasonableness and likelihood of his story.

Plaintiff in error contends for the application of the rule that, to constitute the crime of obtaining money under false pretenses, the pretense or pretenses relied upon must relate to a past event or an existing fact and not upon any representation in relation to a future transaction, however false and fraudulent it may be. This is the correct rule to be applied to cases of this character. In the instant case there were representations made to Armknecht, relating to existing facts which were shown to be untrue, and relied upon by him. This is sufficient to meet the requirements of the statute. See Comp. St. 1929, sec. 28-1207. Plaintiff in error contends that the record shows that Armknecht relied only upon representations made as to future transactions. It is true that when Armknecht was asked why he turned this money over to Potard, he replied: "Well, he promised he

would split the commission with me, which amounted to one hundred and fifty dollars apiece."

When the necessary elements of the crime are sustained by evidence, the question of the intent with which the transaction was carried on is usually one for the jury to determine after a consideration of all the facts and circumstances. The fact that additional representations may have been made relating to future transactions are material only as circumstances to be considered by the jury in determining the question of intent. Every case of this character is usually accompanied by grandiose promises and assertions of great benefits to be derived in the future as an inducement to the completion of the fraud. Such promises and assertions cannot form the basis for a prosecution for obtaining money under false pretenses, but if there be evidence in the record of the misrepresentation of a past event or present fact, relied upon by the person alleged to have been defrauded, the issue is still one for the jury.

Plaintiff in error contends that the trial court committed reversible error in giving the following instruction after the jury had deliberated for more than 19 hours:

"This case has been submitted to you on instructions which I think are clear and point out the issue for you to determine. You have been given two forms of verdict, one of guilt and one of not guilty. It is your duty to return a verdict. The court does not intimate to you in the slightest degree what your verdict shall be. You should return one of these verdicts. Which one is for you to say.

"Although the verdict to which a juror agrees must, of course, be his own verdict, the result of his own convictions, yet in order to bring twelve minds to an unanimous result, you must examine the evidence guided by the instructions carefully, with candor and a proper regard and deference to the opinons of each other. You should consider that you are selected in the same manner and from the same source from which any further jury must be and there is no reason to suppose that the case will ever be submitted to 12 men more intelligent, more impartial or more competent to decide

the issue or that more or clearer evidence will be produced on one side or the other. And with this view, it is your duty to decide the case if you can conscientiously do so. You have taken an oath to try this case under the evidence and instructions of the court and you should see you do your full duty thereunder.

"Read the instructions carefully again, discuss the evidence among yourselves with open minds and see if some agreement cannot be reached. Will you not try and reach a verdict."

We are of the opinion that the giving of this instruction is prejudicial error. The only purpose that can be gleaned from it is that the trial court was peremptorily directing an agreement. In this the court invades and trespasses upon the province of the jury. The defendant in a criminal case is entitled to an acquittal unless each of the twelve men on the jury is convinced beyond a reasonable doubt of the guilt of the defendant without being importuned or coerced by the trial court. The defendant is entitled to the benefit of a disagreement by the jury. The very fact that each member of the jury must be convinced beyond a reasonable doubt of the guilt of the defendant before a conviction can be had evidences the fact that jurors who are not convinced beyond a reasonable doubt of the guilt of the defendant are obligated to sustain their convictions, even if a disagreement is the result. Of course, verdicts ought to be agreed upon if possible. On the other hand, a disagreement may result because of the very oath taken by a juror as it may be the only way that his reasonable doubt may be manifested. In such a case, disagreement of the jury is a protecting right to which a defendant is entitled.

The attempt of the court in this instruction to absolve himself from any intent to press or coerce a verdict is of no avail. The prestige of a trial court with the ordinary jury is well known. Any attempt by the court to encourage a verdict will be seized upon by the majority as a coercive argument against the minority, especially if the minority be small. Such a situation does not meet the constitutional

requirements of a speedy, public trial by an impartial jury. *Sharp v. State,* 115 Neb. 737, 214 N. W. 643; *State v. Clark,* 38 Nev. 304, 149 Pac. 185; *State v. Campbell,* 166 Mo. App. 589, 149 S. W. 1173.

As we have said, the only purpose of such an instruction is to encourage or coerce the jury into arriving at a verdict. If the instruction does not accomplish that purpose, there is utterly no reason for giving it. If it does accomplish that purpose, then it is clearly an invasion of the rights of the jury, and the defendant has been deprived of his right to a speedy, public and impartial trial. The law contemplates that, when the jury have heard the evidence and have been instructed by the court as to the law, they understand the character and nature of their duty.

We realize that cases exist which hold that, if there be no hint of rebuke or importunity on the part of the trial court, that such an instruction is not erroneous, but we think the better rule to be that it is error to give such an instruction, no matter how effectively its real purpose may be concealed by the method of expression used.

The verdict and judgment are reversed and the cause remanded for a new trial.

REVERSED.