**UNITED STATES v. SORCEY.**

No. 8848.

Circuit Court of Appeals, Seventh Circuit.
Nov. 17, 1945.

Rehearing Denied Dec. 7, 1945.

900

Eugene J. Sullivan and Royal M. Galvin, both of Milwaukee, Wis., for appellant.

Timothy T. Cronin and E. J. Koelzer, U. S. Atty., both of Milwaukee, Wis., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

Defendant appeals from a judgment rendered on a verdict of guilty upon an indictment in four counts. The first three counts charged him and Martin King, Dominick Rizzo, Anthony Cicerello, and Sebastian Vermiglio with possessing, selling and transferring, and with intent to sell and transfer or otherwise use, certain United States Federal Reserve notes in violation of 18 U.S.C.A. §§ 264, 265, and 268. The fourth count charged the defendant with conspiring with others to commit an offense against the United States by unlawfully possessing, receiving, exchanging, transferring and using with intent to defraud, falsely made, forged and counterfeit obligations of the United States in violation of 18 U.S.C.A. § 88.

At the trial the evidence for the Government consisted of the testimony of James Carter, an accomplice, four treasury department agents, a Chicago police officer, and several other witnesses. From the evidence the jury might have found the following facts: Sometime in 1944, Carter, Sorcey, and one Volpe formed a partnership to operate a tavern. The license was granted to Volpe. Carter obtained a bartender's license and managed the tavern, but because of Carter's criminal record the license was revoked, and on July 1, 1944, Sorcey bought Carter's interest in the tavern.

On June 26, 1944, Sorcey and King called Carter into the back room of the tavern, told him that they had some "queer," that is, counterfeit money, and wanted to know if he knew anyone who would buy it. King produced ten or twelve $20 bills, saying some of them were phony, and Sorcey showed him a couple of "hundred dollar" counterfeit bills. On August 9 Sorcey told him, "Cokie Joe (defendant Cicerello) is over in Chicago," "he is passing those phoney bills like a house afire,"

and "He wants you to go with him." July 11, Vermiglio gave Carter fifteen $20 counterfeit bills and told him to call Sorcey. Carter, Sorcey, and Cicerello met the next morning and Sorcey gave Carter additional counterfeit bills, and thereafter Carter and Cicerello drove to several cities in Indiana and passed the $20 bills. One of the bills was passed by Cicerello in a restaurant operated by a Mrs. Kirkpatrick in Chicago, Illinois. · On the return trip Carter was arrested at Chicago and eight of the $20 counterfeit bills were found on his person.

■ Sorcey did not take the stand, and the evidence against him consisted principally of Carter's testimony as to what passed between him and defendant and the testimony of treasury department agents who testified as to conversations between Sorcey and Carter, as well as to his conduct after Carter's arrest. Under this state of the record, there can be no question of the sufficiency of the evidence; consequently, defendant's motion for a directed verdict was properly overruled. Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A. 1917F, 502, Ann.Cas.1917B 1168.

Defendant complains of the refusal to give a requested instruction on the weight to be accorded the testimony of an accomplice. We find no merit in this contention.

■ There is no requirement that any specifically framed charge be given if the general charge includes fair, comprehensive instructions upon the subject-matter involved, and in framing a charge upon the elements bearing upon credibility of witnesses, the court is not to be bound to a hard and fast formula as to each and every phase of his charge. Wainer v. United States, 7 Cir., 82 F.2d 305, and United States v. Pape, 2 Cir., 144 F.2d 779, 781. Here, the record reveals that Carter was not only an accomplice, but it also showed that he had been convicted of a felony. The court told the jury that the testimony of a witness who has been convicted of a crime may not be as worthy of belief as one who has never been convicted and that his testimony ·should be taken with caution. It called attention to the witness's testimony as to the part he had played in violating the law, and instructed the jury to scrutinize carefully this evidence in determining the weight and credit to be given it. Thus it is clear

that the court warned the jury against conviction upon the testimony of an accomplice. Jelke v. United States, 7 Cir., 255 F. 264, 283.

■ Defendant also contends that the court erred in failing to incorporate in its instructions on circumstantial evidence an instruction that the facts proved must be incompatible with innocence and incapable of explanation upon any other reasonable theory than that of guilt, and that it is not sufficient that they coincide with and render probable the guilt of the accused, but they must exclude every other reasonable hypothesis of innocence.

This was not a case where guilt depended entirely upon circumstantial evidence. Nevertheless, the court in its instruction said: "To warrant a conviction on circumstantial evidence, each fact necessary to the conclusion of guilt must be proved by competent evidence beyond a reasonable doubt, and all the facts so proven must be consistent with each other and with the main facts to be proven, and the circumstances taken together must be of a conclusive nature and producing, in effect, a reasonable and moral certainty beyond a reasonable doubt that the accused committed the offense charged." In this situation we perceive no error in refusing to instruct the jury as requested. Caminetti v. United States, supra; Estabrook · v. United States, 8 Cir., 28 F.2d 150; United States v. Austin-Bagley Corp., 2 Cir., 31 F.2d 229; Corbett v. United States, 8 Cir., 89 F.2d 124; and Beckman v. United States, 5 Cir., 96 F.2d 15.

·The facts concerning the claimed error in recalling the jury for further instruction are these: After the jury had been deliberating for some time, the court recalled the jury and said, "I would like to ask you, Mr. Foreman, if there is any particular item which you desire further instructions on or whether you think that further deliberation might result in a verdict." To this inquiry the foreman replied that the jury had completed part of the decisions and the rest would be completed in a short period of time, whereupon the court said: "I want to impress upon you the great importance on having this jury reach a verdict. This is a long and expensive trial and expensive to the defendants and to the government. I don't think any other twelve people would have any more intelligence or be able to consider the matter any better than you can

do. It would only necessitate another trial if you did not reach a verdict, and while, as I said before, if you have reasonable doubts, why, it is, of course, your duty to maintain them, but at the same time you should also listen, if you are in disagreement * * * to the arguments of those who may seem to be in the majority, to see if you might not have overlooked something in the evidence that didn't come readily to your mind. * * * I don't want to unduly prolong your deliberations, but I do feel that it would be necessary, if you didn't agree, to keep you together for some several hours yet."

Now, defendant contends that the court's remarks were coercive and prejudicial, citing State v. Fisher, 23 Mont. 540, 59 P. 919; State v. Clark, 38 Nev. 404, 149 P. 185; and Potard v. State, 140 Neb. 116, 299 N.W. 362.

■ The first two of these cases are clearly distinguishable on the facts, and while the Potard case seems to be applicable, we think the better rule and reasoning may be found in Allis v. United States, 155 U.S. 117, 15 S.Ct. 36, 39 L.Ed. 91; and United States v. McGuire, 2 Cir., 64 F.2d 485. In the Allis case, supra, 155 U.S. 123, 15 S.Ct. 38, 39 L.Ed. 91, the court said: "It is a familiar practice to recall a jury, after they have been in deliberation for any length of time, for the purpose of ascertaining what difficulties they have in the consideration of the case, and of making proper efforts to assist them in the solution of those difficulties. It would be startling to have such action held to be error, and error sufficient to reverse a judgment. The time at which such a recall shall be made, if at all, must be left to the sound discretion of the trial court, * * *."

We think that what was said in the case of Dwyer v. United States, 2 Cir., 17 F.2d 696, 698, is appropriate here. "If the whole episode be viewed as an entirety, we are unable to perceive that it had any tendency to coerce the jury or to treat any accused with unfairness. Coercion, as distinguished from duress, has often been called a moral wrong. There can be no wrong in reminding a body of jurors of their duty to exercise intelligence and listen to reason, and that was all that was done in the present instance."

We do not wish it understood that we approve that part of the instruction in which the jurors were told that if they

did not agree, it would be necessary to keep them "together for some several hours yet," but in the light of all the evidence, instructions and other matters properly of record, we think the action of the court should be treated as harmless.

Defendant also contends that the court improperly participated in the trial of the case and imposed an unusually harsh sentence.

■ It is asserted that the remarks of the court about the length of the cross-examination were prejudicial to defendant. Five attorneys represented the defendants on trial. The court on several occasions suggested that the cross-examination was "long and drawn out" and that counsel were going over the same matter three or four times. We can't say this constitutes reversible error.

■ As to the court's participation in the trial, the facts are that when Carter was called to testify, he answered, "I can't hear you," and thereafter frequently indicated he had difficulty in hearing the questions. Thereupon the court said: "Speak loud when you talk to the witness." "All of you speak so quietly that I don't think this witness will be able to hear unless you make an effort to put on a little extra horsepower." "Don't go dropping your voice so that I can't even hear you. How do you expect he is going to hear it?"

The argument is that it was the sole province of the jury to resolve the issue of whether Carter could hear the questions properly, and his actions and demeanor should have been considered by the jury in determining his credibility, without the court obtruding his opinion on the question of Carter's ability to hear the questions. The argument and contention is absolutely void of any merit.

■ Defendant insists that the penalty imposed when compared with those given the other defendants was extremely harsh. Defendant was sentenced to serve terms of seven years each on the first three counts and two years on the fourth count, the sentences to run concurrently.

■ The fixing of penalties for crimes is a legislative function. What constitutes an adequate penalty is a matter of legislative judgment and discretion, and the courts will not interfere therewith unless the penalty is clearly and manifestly cruel and unusual, Moore v. Ader-

hold, 10 Cir., 108 F.2d 729, and where the sentence imposed is within the limits prescribed by the statute for the offense committed, it ordinarily will not be regarded as cruel and unusual, Schultz v. Zerbst, 10 Cir., 73 F.2d 668. The sentences in this case were well within the maximum statutory penalties. In such a situation, we may not disturb a judgment fixing such penalties because only of the seeming severity of the sentence. Bailey v. United States, 7 Cir., 284 F. 126.

Defendant's final attack upon the judgment is based upon the refusal of the court to grant a new trial because the bailiff in charge of the jury communicated with the jury.

In the consideration of defendant's contention we note that the record discloses that after the supplemental instructions heretofore discussed had been given to the jury they retired for further deliberations, and after the jury had agreed on verdicts of guilty as to all of the defendants on trial, and while the foreman was signing the form of verdicts to be returned, the bailiff came to the door of the judge's chambers and informed him that the jury wanted to know whether all the counts had to be accounted for—whether they had to pass on all counts in the indictment. The court directed the bailiff to tell the jury "yes" and they were so informed. At the time of this occurrence all counsel for defendants were in the chambers, and the judge informed them of the jury's request and of the directions he had given to the bailiff. Counsel were asked "if they had any objection to the procedure, * * *." To the court's inquiry, neither counsel for defendant, nor the attorney for the other defendants made an objection, but each remained silent.

To be sure, the jury should pass upon each case free from external causes tending to disturb the exercise of deliberate and unbiased judgment, hence, communications, between jurors and third persons or officers in charge of the jury, are absolutely forbidden, and, if it appears that such communications have taken place, a presumption arises that they were prejudicial, but this presumption may be rebutted by evidence, Wheaton v. United States, 8 Cir., 133 F.2d 522. But, we must not permit the integrity of the jury to be assailed by mere suspicion and surmise; it is presumed that the jury will be true

to their oath and conscientiously observe the instructions of the court, Baker v. Hudspeth, 10 Cir., 129 F.2d 779, 782. And where, upon a motion for a new trial, it is claimed that communications have taken place and competent evidence is offered in substantiation of the claim, it is the duty of the trial court to hear and consider it, and when it does so, and decides the motion thereon, its decision is reviewable for abuse of discretion only. Wheaton v. United States, supra, and Ray v. United States, 8 Cir., 114 F.2d 508. Applying the tests required by the cases cited, the question is whether the court abused its discretion. We think it did not.

The judgment of the District Court will be affirmed. It is so ordered.